**Orvell Daniel THRONEBERRY,**
**Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–01–079–CR.**

Court of Appeals of Texas,
Fort Worth.

Feb. 28, 2002.

Rehearing Overruled April 11, 2002.

Publication Ordered May 2, 2002.

Discretionary Review Dismissed
June 19, 2002.

James Rasmussen, Wichita Falls, for appellant.

Tim Cole, District Attorney, Montague, for appellee.

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Appellant Orvell Daniel Throneberry appeals his conviction and twenty-five-year sentence for felony evading arrest. Appellant asserts three points: (1) the trial court lacked jurisdiction to try the instant offense as a third degree felony under penal code section 38.04 because Appellant's prior evading arrest conviction was not a "final conviction"; (2) the trial court erred in overruling Appellant's motion for instructed verdict because there was insufficient evidence that the officer who arrested Appellant was "attempting a lawful arrest" as alleged in the indictment; and (3) Appellant's prosecution for felony evading arrest violated *Brooks v. State*, 957 S.W.2d 30 (Tex.Crim.App.1997) because the State did not plead its notice of intent to include a sentence enhancement paragraph "in some form." We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 1999, Officer Art Ferguson investigated a vandalism call. The officer encountered Appellant's car exiting an alleyway and "fishtailing" as it accelerated into the street. Though the officer began to pursue Appellant's vehicle with his lights and siren on, Appellant fled. After a high-speed vehicle chase and a chase on foot, the officer finally apprehended and arrested Appellant.

Appellant's trial took place on January 10 and 11, 2001. Appellant had previously been convicted of felony aggravated assault with a firearm and two other felony convictions for theft. Appellant had also pled guilty to a charge of evading arrest in 1992, a Class B misdemeanor, for which he received a five-day probated jail sentence. Because of Appellant's prior evading arrest conviction, the primary evading arrest charge was elevated to third degree felony status under penal code section 38.04. TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (Vernon Supp.2002). Due to Appellant's three prior felony convictions, his sentence was enhanced to a minimum of twenty-five years under section 12.42(d) of the penal code. TEX. PENAL CODE ANN. § 12.42(d).

## JURISDICTION

■ In his first point, Appellant asserts that the trial court lacked jurisdiction over the instant case because the prior evading arrest charge used to enhance the instant offense from a misdemeanor to a third degree felony resulted in probation rather than a "final conviction." The elements of the offense of felony evading arrest under section 38.04(a), (b)(2) are: (1) the actor intentionally fled from a person he knew was a peace officer attempting to lawfully arrest him; (2) the actor used a vehicle in fleeing from the officer; and (3) the actor has been previously convicted under section 38.04. TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A). The language in section 38.04(b)(2) that makes the offense of evading arrest a third degree felony is presented as an *element* of the felony offense itself, rather than as an enhancement provision, such as can be found in section 12.42 of the penal code. *See* TEX. PENAL CODE ANN. § 12.42 (providing penalties for repeat and habitual felony offenders); *State v. Atwood,* 16 S.W.3d 192, 196 (Tex. App.-Beaumont 2000, pet. ref'd) (holding "a prior offense of evading arrest is an *element* of the offense of felony evading arrest" (emphasis added)).

■ Appellant argues the well-established principle espoused in *Ex parte Murchison,* that a conviction is not final for enhancement purposes where the imposition of sentence has been suspended and probation granted, applies in his case. 560 S.W.2d 654, 656 (Tex.Crim.App.1978). However, Appellant ignores a fine distinction set forth in *Murchison* and its progeny, which is that an order of probation, though it may not be considered a *"final conviction"* for enhancement purposes, is nonetheless a conviction. In other words,

It is well-settled that a probated sentence is not a final conviction for *enhancement purposes* unless it is re-

voked. When a defendant receives "regular" probation ... he is *convicted* and punishment is assessed. However, the imposition of the sentence is suspended, and the conviction does not become final for purposes of enhancement unless the probation is revoked. [Emphasis added.]

*Ex parte Langley,* 833 S.W.2d 141, 143 (Tex.Crim.App.1992) (citations omitted); *see also Murchison,* 560 S.W.2d at 656.

■ Because Appellant's prior evading arrest conviction is an *element* of the instant offense, rather than a means by which the instant offense is merely *enhanced,* the *Murchison* rule requiring that a conviction be final for enhancement purposes does not apply. The indictment here alleges a previous conviction for evading arrest, which is sufficient to vest the trial court with felony jurisdiction over Appellant's case. "[J]urisdiction vests when the pleadings are submitted to the trial court and contain the requisite number of previous convictions." *Atwood,* 16 S.W.3d at 194 (quoting *Tamez v. State,* 11 S.W.3d 198, 201 (Tex.Crim.App.2000)). We overrule Appellant's first point.

### SUFFICIENCY OF THE EVIDENCE

■ Appellant's second point asserts that the trial court erred by overruling his motion for instructed verdict because there was insufficient evidence to prove he was evading a peace officer who was "attempting lawfully to arrest" him as required by penal code section 38.04. *See* TEX. PENAL CODE ANN. § 38.04. A challenge to the denial of a motion for instructed verdict is actually a challenge to the legal sufficiency of the evidence. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991); *Jackson v. State,* 50 S.W.3d 579, 597 (Tex.App.-Fort Worth 2001, pets. ref'd). Though section 38.04

states that the peace officer must be attempting lawfully to arrest *or detain* the defendant, the indictment charging Appellant with the offense alleged only that the officer was attempting lawfully to *arrest* Appellant. Therefore, the State was required to prove that Officer Ferguson was attempting to lawfully arrest him.

■ In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict. *Cardenas v. State,* 30 S.W.3d 384, 389-90 (Tex.Crim. App.2000); *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ Appellant argues the evidence was insufficient to show Officer Ferguson was "attempting" a "lawful arrest" of him at the moment he emerged from the alleyway and the pursuit began. As a general rule, police officers must obtain an arrest warrant prior to taking someone into custody. *DeJarnette v. State,* 732 S.W.2d 346, 349 (Tex.Crim.App.1987). However, chapter 14 of the code of criminal procedure provides limited exceptions to this rule. TEX.CODE CRIM. PROC. ANN. arts. 14.01–.04 (Vernon 1977 & Supp.2002). A police officer may make a warrantless arrest for any offense committed in his presence or within his view. *Id.* arts. 14.01(b), 14.03. The State argues that article 14.01(b) applies, which justifies a warrantless arrest for a misdemeanor offense being committed in an officer's presence. *Id.* art. 14.01(b) (Vernon 1977).

Officer Ferguson testified that he encountered Appellant's vehicle around 1:35 a.m. while investigating reports that several windows in cars and buildings in the area had been broken by vandals throwing rocks and bricks. Ferguson observed Appellant's vehicle turn off the street into an alley where Ferguson knew discarded bricks were available. There was testimony that Ferguson suspected that vandals had been getting the bricks from the area. Ferguson testified that it was "unusual" for a car to be in an alley at that time of night in downtown Bowie, and felt that it was "suspicious" in light of the vandalism that was taking place in the area. Ferguson drove around to the end of the alley where he knew Appellant's car would have to exit onto Hulme Street. As Ferguson turned onto Hulme, he observed Appellant's car "fishtail" out of the alley without stopping. Both Officer Ferguson and his passenger, who was a city councilman on a "ride-along," testified that Appellant's headlights were not turned on when he exited the alley. Ferguson's police report, however, indicated that Appellant turned the lights off about 100 yards down the street after he exited the alley. Ferguson further testified that, when he observed Appellant's car fishtail out of the alley, he activated his emergency lights and siren in an attempt to stop Appellant's vehicle.

According to these facts, the jury could reasonably have found that Appellant violated section 545.256 of the transportation code, which provides: "An operator emerging from an alley, driveway, or building in a business or residence district shall ... stop the vehicle before moving on

a sidewalk or the sidewalk area extending across an alley or driveway." Tex. Transp. Code Ann. § 545.256(1) (Vernon 1999). Though the testimony reflected that there was no sidewalk crossing in front of the entrance or exit from the alley to the street, Ferguson testified that there was a curb that was "broken by the alleyway so that cars" could enter and exit the alley or pedestrians could walk across. Though Appellant refuted the contention, the State argued that the "improved area [where] ... pedestrians walk" constituted a "sidewalk area" pursuant to section 545.256(1). The jury could reasonably have agreed with the State's contention and determined that Appellant committed an offense in Ferguson's presence or within his view by failing to stop at the end of the alley before entering the street.

The evidence also shows that Appellant's act of "fishtailing" out of the alley is a misdemeanor offense under section 545.420 of the transportation code, which provides that "[a] person may not participate in any manner in ... an exhibition of vehicle speed or acceleration." *Id.* § 545.420(a)(5). Though section 545.420 of the transportation code is entitled "Racing on Highway," courts have rejected the narrow interpretation that the statute only applies where a defendant is involved in some sort of a speed competition with another vehicle. *Evers v. State,* 576 S.W.2d 46, 49 (Tex.Crim.App. [Panel Op.] 1978) (holding that accelerating a car so that it threw gravel on police car was enough to satisfy exhibition of speed violation); *Collins v. State,* 829 S.W.2d 894, 896 (Tex.App.-Dallas 1992, no pet.) (holding that accelerating a car so that it "screeched" and "fishtailed a bit" was sufficient for offense); *Harris v. State,* 713 S.W.2d 773, 775 (Tex.App.-Houston [1st Dist.] 1986, no pet.) (holding that accelerating a car so that its tires spun when a light turned from red to green was suffi-

cient). This same line of cases also holds that such offenses committed in an officer's presence or within his view create probable cause to arrest the defendant without a warrant. *Evers,* 576 S.W.2d at 49 & n. 1; *Collins,* 829 S.W.2d at 897; *Harris,* 713 S.W.2d at 775. Officer Ferguson testified that when he observed Appellant's vehicle exit the alley at such a rate of speed as to cause the car to fishtail, he believed it was a traffic violation. Accordingly, the jury could reasonably have believed that Appellant committed an offense in Ferguson's presence or within his view by fishtailing from the alley into the street.

Further, it is an offense to drive without the headlights of a car illuminated at night. Tex. Transp. Code Ann. § 547.302(a)(1) (providing "A vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle ... at nighttime."). Though the testimony was conflicting, there was testimony from Ferguson and the councilman that Appellant's lights were off when he fishtailed from the alley into the street. If the jury chose to believe such testimony, Appellant committed yet another offense in Ferguson's presence or within his view that created probable cause for the officer to lawfully arrest Appellant.

In light of the testimony in the record, the evidence was sufficient to sustain Appellant's conviction for evading arrest. Because the evidence demonstrates that Appellant committed at least one misdemeanor offense in Officer Ferguson's presence or within his view before the officer initiated his attempt to stop Appellant, Ferguson could have arrested Appellant without a warrant. Because Ferguson could have made a warrantless arrest of Appellant, the jury could reasonably have concluded that Appellant was evading an officer who was lawfully attempting to ar-

rest him. We overrule Appellant's second point.

## NOTICE OF ENHANCEMENT

 In his third point, Appellant complains that the State failed to give proper notice that it would seek an enhanced penalty under section 12.42(d) of the penal code based on Appellant's three prior felony convictions because the State merely mailed Appellant's counsel a letter of its intent to enhance rather than filing its notice as a pleading "in some form" pursuant to *Brooks*, 957 S.W.2d at 34. The letter the State sent to Appellant's counsel stated:

> This letter will serve as notice that the State will seek to enhance [Appellant's] punishment under Chapter 12 of the Texas Penal Code with evidence of prior convictions.... Specifically, we will offer evidence that the defendant has previously been convicted [of] ... Theft Over $750 ... Aggravated Assault with a Firearm ... and ... Theft Over $750.... Since the judgment in Cause No. 044–86 contains an affirmative finding that the offense involved the use of a deadly weapon, a firearm, I believe that the defendant's punishment range should he be convicted would be 25 to 99, or life.... Let me know if your client is interested in discussing a plea bargain.

Though the State concedes that its notice of intent was never filed with the trial court as a pleading, it maintains that the error is harmless because the letter "conveyed the same notice that would have been given had the document been filed with the clerk." The first question for us to decide is whether notice in the form of an informal letter, rather than a pleading, is sufficient notice under the law to enhance Appellant's sentence. We conclude it is not.

## Sufficiency of the State's Notice of Its Intent to Enhance

In *Brooks*, Appellant Brooks claimed he did not have adequate notice of the State's intent to enhance his punishment because an enhancement allegation was not pled in the indictment charging him with the primary offense. *Id.* at 31. Though the enhancement allegation was not included in the indictment itself, the State made a motion to amend the indictment with an enhancement allegation prior to trial. *Id.* The trial court ordered the enhancement paragraph added and set forth what the paragraph should say, but the indictment itself was never amended to reflect the addition. *Id.*

The court of criminal appeals held that such notice need not be pled in the indictment itself to be considered proper notice, so long as the State pled its notice of intent to enhance "in some form" prior to trial. *Id.* at 34. The court concluded that "the requisite notice was conveyed by the State's motion [to amend the indictment] and the trial court's order" even though the indictment itself was never amended to reflect the enhancement allegation. *Id.*

Here, there is neither a pleading or motion in the record to indicate that the State sought to have three enhancement allegations added to the indictment nor is there an order indicating that the trial court granted any such request. The only action the State took to show it gave Appellant written notice of intent to seek punishment enhancement was to introduce a copy of the letter into evidence *after* the guilt-innocence phase of the trial was over. Prior to this evidence being admitted, the court simply asked Appellant whether he had received the letter, and, upon Appellant's affirmative answer, began to question Appellant as to whether the allegations of his three prior felony convictions

were true. Appellant pled "not true" to all three allegations and objected to the State's use of them to enhance his punishment on grounds that the letter did not constitute proper notice. The trial court overruled his objection and proceeded to the punishment phase. During the punishment phase, the State was permitted to prove up the three prior convictions, and the jury was charged accordingly.

Appellant's counsel objected on inadequate notice grounds at several points during the proceedings. First, he objected when the trial court concluded that the letter constituted proper notice. Subsequently, he objected to the jury charge on punishment, which included the three enhancement grounds. Under an interpretation of *Brooks*' plain language, we cannot conclude that an informal letter admitted into evidence after the guilt-innocence phase constitutes a pleading in any form. Therefore, the State's notice of its intent to enhance Appellant's sentence was not proper.

## Harmless Error

In *Brooks*, the Houston Court of Appeals noted that a discrepancy between allegations in an indictment and allegations in a trial court's punishment charge, constitutes a variance between the indictment and the jury charge. *Brooks v. State*, 921 S.W.2d 875, 879 (Tex.App.-Houston [14th Dist.] 1996), *aff'd*, 957 S.W.2d 30 (Tex. Crim.App.1997). Because there was a defect in the charge to which Brooks failed to object, the court applied the *Almanza* "egregious harm" analysis, determining whether Brooks was denied a "fair and impartial trial." *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh'g)). The appellate court held that egregious harm did not result because: (1) Brooks testified that he had been convicted of the felony being used to

enhance his sentence; (2) Brooks was notified "months before his trial" that the State intended to seek an enhanced punishment range; and (3) Brooks did not complain or show that the enhancement allegation surprised him or that he was unprepared to contest the allegation. *Id.*

■ Here, we conclude that there is also a variance between the indictment and the jury charge. Though the State was not required to plead the enhancement allegations in the indictment itself, it was required to plead the enhancement allegations at some point prior to trial. Appellant objected to the jury charge's instruction regarding the enhancement allegations. Therefore, rather than an "egregious harm" analysis, we must determine whether the error was "calculated to injure the rights of the defendant." *Almanza*, 686 S.W.2d at 171.

■ Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim.App.1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32. Properly preserved error will call for reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171. In determining whether harmful error occurred, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

■ Although Appellant did not admit to the prior convictions used by the State to enhance his punishment, the other two *Brooks* factors are present here and equally relevant to our harm analysis. First,

Appellant and his attorney admitted they received the letter of notice of the State's intent to enhance Appellant's punishment from a third degree felony under section 12.34 of the penal code (with a punishment range of two to ten years) to repeat and habitual offender felony status under section 12.42(d) of the penal code (with a punishment range of twenty-five to ninety-nine years). *See* TEX. PENAL CODE ANN. §§ 12.34, 12.42(d) (Vernon 1994 & Supp. 2002). The State's letter to Appellant's counsel explaining that his punishment was eligible for enhancement under section 12.42(d) was dated October 8, 1999, and the guilt-innocence phase of Appellant's trial did not begin until January 10, 2001. Consequently, Appellant received notice of the State's intent to enhance his punishment well over a year before the time of trial. Second, Appellant does not contend that he was unfairly surprised by or unable to prepare to defend against the State's attempt to enhance his sentence. Appellant's only claim is that the State failed to properly plead its notice of intent to enhance as required by *Brooks*. The record fails to demonstrate any sort of harm Appellant suffered as a result of the variance between the indictment and the court's punishment charge. Therefore, though the court erred in including enhancement paragraphs in the punishment charge that the State failed to plead in some form, the error was not calculated to injure Appellant's rights.

## CONCLUSION

We affirm Appellant's conviction for felony evading arrest under penal code section 38.04(b)(2) and his twenty-five-year sentence in accordance with penal code section 12.42(d).

WALKER, J., filed a concurring and dissenting opinion.

SUE WALKER, Justice, concurring and dissenting.

I concur with the majority's disposition of appellant's first two issues and with its holding that the trial court erred by including unpleaded enhancement paragraphs in its charge on punishment. I dissent, however, because I cannot agree that this error was harmless.

Inclusion of the unpleaded enhancement allegations in the court's charge changed appellant's possible punishment range from between two and ten years' confinement to between twenty-five and ninety-nine years' confinement. *See* TEX. PENAL CODE ANN. §§ 12.34, 12.42(d) (Vernon 1994 & Supp.2002). The jury assessed the minimum punishment available under the court's erroneous charge: twenty-five years' confinement. Additionally, the record reflects that the jury sent out a note during deliberations on appellant's punishment stating:

> We'll agree the defendant was convicted of the three prior felony offenses. Is verdict form, [No. 1] the only one we can use[?] *Can we sentence the defendant to less than 25 years on Verdict Form No. 1 ... or can[/]should we use another form?* [Emphasis added.]

Thus, the record before us clearly reflects that the jury wanted to sentence appellant to less than twenty-five years' confinement but, based on the inclusion of the unpleaded enhancement allegations in the court's punishment phase charge, was deprived of that option.

Appellant's counsel timely objected to the charge error, i.e., the inclusion of the unpleaded enhancement allegations in the court's punishment charge. Thus, under the *Almanza* harm analysis, reversal is required if appellant suffered "some" harm from the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). Because the record before us

establishes that the jury gave appellant the minimum punishment and desired to use a different verdict form to give him an even lesser punishment, I cannot agree with the majority's conclusion that appellant was not harmed by the charge error. Accordingly, I would remand this case for a new punishment hearing.