COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-079-CR
 
ORVELL DANIEL THRONEBERRY       
           
           
           
           
    APPELLANT
V.
THE STATE OF TEXAS        
           
           
           
           
           
        STATE
------------
FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY
------------
OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW
------------
I. Introduction
On February 28, 2002, we issued an opinion
and judgment affirming the trial court's judgment against Appellant Orvell
Daniel Throneberry for evading arrest and sentencing him to twenty-five years'
confinement. Throneberry v. State, 72 S.W.3d 389 (Tex. App.--Fort Worth
2002, pet. dism'd). The Texas Court of Criminal Appeals granted Throneberry
habeas corpus relief to file an out-of-time petition for discretionary review,
which he has done.  Pursuant to Texas Rule of Appellate Procedure 50, we
withdraw our February 28, 2002 opinion and judgment and substitute the following
modified opinion and accompanying judgment. Tex. R. App. P. 50.
Throneberry appeals his conviction and
twenty-five-year sentence for felony evading arrest. Throneberry asserts three
points:  (1) the trial court lacked jurisdiction to try the instant offense
as a third degree felony under penal code section 38.04 because Throneberry's
prior evading arrest conviction was not a "final conviction"; (2) the
trial court erred in overruling Throneberry's motion for instructed verdict
because there was insufficient evidence that the officer who arrested
Throneberry was "attempting a lawful arrest" as alleged in the
indictment; and (3) Throneberry's prosecution for felony evading arrest violated
Brooks v. State, 921 S.W.2d 875, 879 (Tex. App.--Houston [14th
Dist.] 1996), aff'd, 957 S.W.2d 30 (Tex. Crim. App. 1997), because the
State did not plead its notice of intent to include a sentence enhancement
paragraph "in some form." We sustain Throneberry's third point,
reverse the trial court's judgment, and remand this cause to that court for a
new punishment hearing.
II. Factual and Procedural
Background
On March 6, 1999, Officer Art Ferguson
investigated a vandalism call. The officer encountered Throneberry's car exiting
an alleyway and "fishtailing" as it accelerated into the street.
Though the officer began to pursue Throneberry's vehicle with his squad car
lights and siren on, Throneberry fled. After a high-speed vehicle chase and a
chase on foot, the officer finally apprehended and arrested Throneberry.
Throneberry's trial took place on January
10 and 11, 2001. Throneberry had previously been convicted of felony aggravated
assault with a firearm and two other felony convictions for theft. Throneberry
had also pled guilty to a charge of evading arrest in 1992, a Class B
misdemeanor, for which he received a five-day probated jail sentence. Because of
Throneberry's prior evading arrest conviction, the primary evading arrest charge
was elevated to third degree felony status under penal code section 38.04. Tex.
Penal Code Ann. § 38.04(b)(2)(A) (Vernon 2003). Due to Throneberry's three
prior felony convictions, his sentence was enhanced to a minimum of twenty-five
years under section 12.42(d) of the penal code. Id. § 12.42(d).
III. Jurisdiction
In his first point, Throneberry asserts
that the trial court lacked jurisdiction over the instant case because the prior
evading arrest charge used to enhance the instant offense from a misdemeanor to
a third degree felony resulted in probation rather than a "final
conviction." The elements of the offense of felony evading arrest under
section 38.04(a), (b)(2) are: (1) the actor intentionally fled from a person he
knew was a peace officer attempting to lawfully arrest him; (2) the actor used a
vehicle in fleeing from the officer; and (3) the actor had been previously
convicted under section 38.04. Id. § 38.04(a), (b)(2)(A). The language
in section 38.04(b)(2) that makes the offense of evading arrest a third degree
felony is presented as an element of the felony offense itself, rather
than as an enhancement provision, such as can be found in section 12.42 of the
penal code. See id. § 12.42 (providing penalties for repeat and
habitual felony offenders); State v. Atwood, 16 S.W.3d 192, 196 (Tex.
App.--Beaumont 2000, pet. ref'd) (holding "a prior offense of evading
arrest is an element of the offense of felony evading arrest")
(emphasis added).
Throneberry argues the well-established
principle espoused in Ex parte Murchison, that a conviction is not
final for enhancement purposes where the imposition of sentence has been
suspended and probation granted, applies in his case. 560 S.W.2d 654, 656 (Tex.
Crim. App. 1978). However, Throneberry ignores a fine distinction set forth in Murchison
and its progeny, which is that an order of probation, though it may not be
considered a "final conviction" for enhancement
purposes, is nonetheless a conviction. In other words,

         It
 is well-settled that a probated sentence is not a final conviction for enhancement
 purposes unless it is revoked. When a defendant receives
 "regular" probation . . . he is convicted and punishment is
 assessed. However, the imposition of the sentence is suspended, and the
 conviction does not become final for purposes of enhancement unless the
 probation is revoked. [Emphasis added.]

Ex parte Langley, 833 S.W.2d 141,
143 (Tex. Crim. App. 1992) (citations omitted); see also Murchison, 560
S.W.2d at 656.
Because Throneberry's prior evading arrest
conviction is an element of the instant offense, rather than a means by
which the instant offense is merely enhanced, the Murchison
rule requiring that a conviction be final for enhancement purposes does not
apply. The indictment here alleges a previous conviction for evading arrest,
which is sufficient to vest the trial court with felony jurisdiction over
Throneberry's case. "[J]urisdiction vests when the pleadings are submitted
to the trial court and contain the requisite number of previous
convictions." Atwood, 16 S.W.3d at 194 (quoting Tamez v. State,
11 S.W.3d 198, 201 (Tex. Crim. App. 2000)). We overrule Throneberry's first
point.
IV. Sufficiency of the
Evidence
Throneberry's second point asserts that
the trial court erred by overruling his motion for instructed verdict because
there was insufficient evidence to prove he was evading a peace officer who was
"attempting lawfully to arrest" him as required by penal code section
38.04. See Tex. Penal Code Ann. § 38.04. A challenge to the denial of
a motion for instructed verdict is actually a challenge to the legal sufficiency
of the evidence. Madden v. State, 799 S.W.2d 683, 686 (Tex. Crim. App.
1990), cert. denied, 499 U.S. 954 (1991); Jackson v. State, 50
S.W.3d 579, 597 (Tex. App.--Fort Worth 2001, pet. ref'd). Though section 38.04
states that the peace officer must be attempting lawfully to arrest or
detain the defendant, the indictment charging Throneberry with the offense
alleged only that the officer was attempting lawfully to arrest Throneberry.
Therefore, the State was required to prove that Officer Ferguson was attempting
to lawfully arrest him.
In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict. Cardenas v. State, 30 S.W.3d 384, 389-90
(Tex. Crim. App. 2000); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.
Crim. App. 1992), cert. denied, 507 U.S. 975 (1993). The critical
inquiry is whether, after so viewing the evidence, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App.), cert. denied, 522
U.S. 844 (1997). This standard gives full play to the responsibility of the
trier of fact to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).
Throneberry argues the evidence was
insufficient to show Officer Ferguson was "attempting" a "lawful
arrest" of him at the moment he emerged from the alleyway and the pursuit
began. As a general rule, police officers must obtain an arrest warrant prior to
taking someone into custody. DeJarnette v. State, 732 S.W.2d 346, 349
(Tex. Crim. App. 1987). However, chapter 14 of the code of criminal procedure
provides limited exceptions to this rule. Tex. Code Crim. Proc. Ann. arts.
14.01-.04 (Vernon 1977 & Supp. 2003). A police officer may make a
warrantless arrest for any offense committed in his presence or within his view.
Id. arts. 14.01(b), 14.03. The State argues that article 14.01(b)
applies, which justifies a warrantless arrest for a misdemeanor offense being
committed in an officer's presence. Id. art. 14.01(b).
Officer Ferguson testified that he
encountered Throneberry's vehicle around 1:35 a.m. while investigating reports
that several windows in cars and buildings in the area had been broken by
vandals throwing rocks and bricks. Ferguson observed Throneberry's vehicle turn
off the street into an alley where Ferguson knew discarded bricks were
available. There was testimony that Ferguson suspected that vandals had been
getting the bricks from the area. Ferguson testified that it was
"unusual" for a car to be in an alley at that time of night in
downtown Bowie, and felt that it was "suspicious" in light of the
vandalism that was taking place in the area. Ferguson drove around to the end of
the alley where he knew Throneberry's car would have to exit onto Hulme Street.
As Ferguson turned onto Hulme, he observed Throneberry's car
"fishtail" out of the alley without stopping. Both Officer Ferguson
and his passenger, who was a city councilman on a "ride-along,"
testified that Throneberry's headlights were not turned on when he exited the
alley. Ferguson's police report, however, indicated that Throneberry turned the
lights off about 100 yards down the street after he exited the alley. Ferguson
further testified that, when he observed Throneberry's car fishtail out of the
alley, he activated his emergency lights and siren in an attempt to stop
Throneberry's vehicle.
According to these facts, the jury could
reasonably have found that Throneberry violated section 545.256 of the
transportation code, which provides: "An operator emerging from an alley,
driveway, or building in a business or residence district shall . . . stop the
vehicle before moving on a sidewalk or the sidewalk area extending across an
alley or driveway." Tex. Transp. Code Ann. § 545.256(1) (Vernon 1999).
Though the testimony reflected that there was no sidewalk crossing in front of
the entrance or exit from the alley to the street, Ferguson testified that there
was a curb that was "broken by the alleyway so that cars" could enter
and exit the alley or pedestrians could walk across. Though Throneberry refuted
the contention, the State argued that the "improved area [where] . . .
pedestrians walk" constituted a "sidewalk area" pursuant to
section 545.256(1). The jury could reasonably have agreed with the State's
contention and determined that Throneberry committed an offense in Ferguson's
presence or within his view by failing to stop at the end of the alley before
entering the street.
The evidence also shows that Throneberry's
act of "fishtailing" out of the alley is a misdemeanor offense under
section 545.420 of the transportation code, which provides that "[a] person
may not participate in any manner in  an exhibition of vehicle speed or
acceleration." Id. § 545.420(a)(5). Though section 545.420 of the
transportation code is entitled "Racing on Highway," courts have
rejected the narrow interpretation that the statute only applies where a
defendant is involved in some sort of a speed competition with another vehicle. Evers
v. State, 576 S.W.2d 46, 49 (Tex. Crim. App. [Panel Op.] 1978) (holding
that accelerating a car so that it threw gravel on police car was enough to
satisfy exhibition of speed violation); Collins v. State, 829 S.W.2d
894, 896 (Tex. App.--Dallas 1992, no pet.) (holding that accelerating a car so
that it "screeched" and "fishtailed a bit" was sufficient
for offense); Harris v. State, 713 S.W.2d 773, 775 (Tex. App.--Houston
[1st Dist.] 1986, no pet.) (holding that accelerating a car so that
its tires spun when a light turned from red to green was sufficient). This same
line of cases also holds that such offenses committed in an officer's presence
or within his view create probable cause to arrest the defendant without a
warrant. Evers, 576 S.W.2d at 49 & n.1; Collins, 829
S.W.2d at 897; Harris, 713 S.W.2d at 775. Officer Ferguson testified
that when he observed Throneberry's vehicle exit the alley at such a rate of
speed as to cause the car to fishtail, he believed it was a traffic violation.
Accordingly, the jury could reasonably have believed that Throneberry committed
an offense in Ferguson's presence or within his view by fishtailing from the
alley into the street.
Further, it is an offense to drive without
the headlights of a car illuminated at night. Tex. Transp. Code Ann. §
547.302(a)(1) ("A vehicle shall display each lighted lamp and illuminating
device required by this chapter to be on the vehicle . . . at nighttime.").
Though the testimony was conflicting, there was testimony from Ferguson and the
councilman that Throneberry's lights were off when he fishtailed from the alley
into the street. If the jury chose to believe such testimony, Throneberry
committed yet another offense in Ferguson's presence or within his view that
created probable cause for the officer to lawfully arrest Throneberry.
In light of the testimony in the record,
the evidence was sufficient to sustain Throneberry's conviction for evading
arrest. Because the evidence demonstrates that Throneberry committed at least
one misdemeanor offense in Officer Ferguson's presence or within his view before
the officer initiated his attempt to stop Throneberry, Ferguson could have
arrested Throneberry without a warrant. Because Ferguson could have made a
warrantless arrest of Throneberry, the jury could reasonably have concluded that
Throneberry was evading an officer who was lawfully attempting to arrest him. We
overrule Throneberry's second point.
V. Notice of Enhancement
In his third point, Throneberry complains
that the State failed to give proper notice that it would seek an enhanced
penalty under section 12.42(d) of the penal code based on Throneberry's three
prior felony convictions because the State merely mailed Throneberry's counsel a
letter of its intent to enhance rather than filing its notice as a pleading
"in some form" pursuant to Brooks, 957 S.W.2d at 34. The
letter the State sent to Throneberry's counsel stated:

 This letter will serve as notice that
 the State will seek to enhance [Throneberry's] punishment under Chapter 12 of
 the Texas Penal Code with evidence of prior convictions. . . . Specifically,
 we will offer evidence that the defendant has previously been convicted [of] .
 . . Theft Over $750 . . . Aggravated Assault with a Firearm . . . and . . .
 Theft Over $750. . . . Since the judgment in Cause No. 044-86 contains an
 affirmative finding that the offense involved the use of a deadly weapon, a
 firearm, I believe that the defendant's punishment range should he be
 convicted would be 25 to 99, or life. . . . Let me know if your client is
 interested in discussing a plea bargain.

 
Though the State concedes that its notice
of intent was never filed with the trial court as a pleading, it maintains that
the error is harmless because the letter "conveyed the same notice that
would have been given had the document been filed with the clerk." The
first question for us to decide is whether notice in the form of an informal
letter, rather than a pleading, is sufficient notice under the law to enhance
Appellant's sentence. We conclude it is not.
A. Sufficiency of the
State's Notice of Its Intent to Enhance
In Brooks, appellant Brooks
claimed he did not have adequate notice of the State's intent to enhance his
punishment because an enhancement allegation was not pled in the indictment
charging him with the primary offense. Id. at 31. Though the
enhancement allegation was not included in the indictment itself, the State made
a motion to amend the indictment with an enhancement allegation prior to trial. Id.
The trial court ordered the enhancement paragraph added and set forth what the
paragraph should say, but the indictment itself was never amended to reflect the
addition. Id.
The court of criminal appeals held that
such notice need not be pled in the indictment itself to be considered proper
notice, so long as the State pled its notice of intent to enhance "in some
form" prior to trial. Id. at 34. The court concluded that
"the requisite notice was conveyed by the State's motion [to amend the
indictment] and the trial court's order" even though the indictment itself
was never amended to reflect the enhancement allegation. Id.
Here, there is neither a pleading or
motion in the record to indicate that the State sought to have three enhancement
allegations added to the indictment nor is there an order indicating that the
trial court granted any such request. The only action the State took to show it
gave Throneberry written notice of intent to seek punishment enhancement was to
introduce a copy of the letter into evidence after the guilt-innocence
phase of the trial was over. Prior to this evidence being admitted, the court
simply asked Throneberry whether he had received the letter, and, upon
Throneberry's affirmative answer, began to question Throneberry as to whether
the allegations of his three prior felony convictions were true. Throneberry
pled "not true" to all three allegations and objected to the State's
use of them to enhance his punishment on grounds that the letter did not
constitute proper notice. The trial court overruled his objection and proceeded
to the punishment phase. During the punishment phase, the State was permitted to
prove up the three prior convictions, and the jury was charged accordingly.
Throneberry's counsel objected on
inadequate notice grounds at several points during the proceedings. First, he
objected when the trial court concluded that the letter constituted proper
notice. Subsequently, he objected to the jury charge on punishment, which
included the three enhancement grounds. Under an interpretation of Brooks'
plain language, we cannot conclude that an informal letter admitted into
evidence after the guilt-innocence phase constitutes a pleading in any form.
Therefore, the State's notice of its intent to enhance Throneberry's sentence
was not proper.
B. Harm Analysis
Although Throneberry did not admit to the
prior convictions used by the State to enhance his punishment, Throneberry and
his attorney admitted they received the letter of notice of the State's intent
to enhance Throneberry's punishment from a third degree felony under section
12.34 of the penal code (with a punishment range of two to ten years) to repeat
and habitual offender felony status under section 12.42(d) of the penal code
(with a punishment range of twenty-five to ninety-nine years). Tex. Penal Code
Ann. §§ 12.34, 12.42(d). The State's letter to Throneberry's counsel
explaining that his punishment was eligible for enhancement under section
12.42(d) was dated October 8, 1999, and the guilt-innocence phase of
Throneberry's trial did not begin until January 10, 2001. Consequently,
Throneberry received notice of the State's intent to enhance his punishment well
over a year before the time of trial. Throneberry also does not contend that he
was unfairly surprised by or unable to prepare to defend against the State's
attempt to enhance his sentence. Throneberry's only claim is that the State
failed to properly plead its notice of intent to enhance as required by Brooks,
921 S.W.2d at 879. We hold that, under the circumstances presented here, the
State's letter notice does not present constitutional error and did not affect
Throneberry's substantial rights. See Tex. R. App. P. 44.2(a), (b).
Nonetheless, in Brooks, the case
cited and relied upon by Throneberry, the Fourteenth Court of Appeals noted that
a discrepancy between allegations in an indictment and allegations in a trial
court's punishment charge, constitutes a variance between the indictment and the
jury charge subject to an Almanza harm analysis. Brooks, 921
S.W.2d at 879 (citing Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1985) (op. on reh'g)). Because there was a defect in the charge to which
Brooks failed to object, the court applied the Almanza "egregious
harm" analysis, determining whether Brooks was denied a "fair and
impartial trial." Id. The appellate court held that egregious harm
did not result because: (1) Brooks testified that he had been convicted of the
felony being used to enhance his sentence; (2) Brooks was notified "months
before his trial" that the State intended to seek an enhanced punishment
range; and (3) Brooks did not complain or show that the enhancement allegation
surprised him or that he was unprepared to contest the allegation. Id.
Here, we likewise conclude that there is a
variance between the indictment and the jury charge. Though the State was not
required to plead the enhancement allegations in the indictment itself, it was
required to plead the enhancement allegations at some point prior to trial.
Throneberry objected to the jury charge's instruction regarding the enhancement
allegations. Therefore, rather than an "egregious harm" analysis, we
must determine whether Throneberry suffered "some" harm from the
error. Almanza, 686 S.W.2d at 171.
Appellate review of error in a jury charge
involves a two-step process. Abdnor v. State, 871 S.W.2d 726, 731 (Tex.
Crim. App. 1994). Initially, we must determine whether error occurred. If so, we
must then evaluate whether sufficient harm resulted from the error to require
reversal. Id. at 731-32. Properly preserved error will call for
reversal as long as the error is not harmless. Almanza, 686 S.W.2d at
171. In determining whether harmful error occurred, "the actual degree of
harm must be assayed in light of the entire jury charge, the state of the
evidence, including the contested issues and weight of probative evidence, the
argument of counsel and any other relevant information revealed by the record of
the trial as a whole." Id.
The inclusion of the unpleaded enhancement
allegations in the court's punishment charge changed Throneberry's possible
punishment range from between two and ten years' confinement to between
twenty-five and ninety-nine years' confinement. See Tex. Penal Code
Ann. §§ 12.34, 12.42(d). The jury assessed the minimum punishment available
under the court's erroneous charge: twenty-five years' confinement.
Additionally, the record reflects that the jury sent out a note during
deliberations on Throneberry's punishment stating:

 We'll agree the defendant was convicted
 of the three prior felony offenses. Is verdict form, [No. 1] the only one we
 can use[?] Can we sentence the defendant to less than 25 years on Verdict
 Form No. 1 . . . or can[/]should we use another form?
 [Emphasis added.]

Thus, the record before us clearly
reflects that the jury wanted to sentence Throneberry to less than twenty-five
years' confinement but, based on the inclusion of the unpleaded enhancement
allegations in the court's punishment phase charge, was deprived of that option.
Because the record before us establishes that the jury gave Throneberry the
minimum punishment and desired to use a different verdict form to give him an
even lesser punishment, it clearly establishes that Throneberry suffered
"some" harm from the charge error. Almanza, 686 S.W.2d at
171. We sustain Throneberry's third point.
VI. Conclusion
We reverse the trial court's judgment on
punishment and remand this case for a new punishment hearing in accordance with
article 44.29(b). See Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon
Supp. 2003).
 
                                                                       
DIXON W. HOLMAN
                                                                       
JUSTICE
 
PANEL B: HOLMAN, GARDNER, and WALKER, JJ.
PUBLISH
DELIVERED: May 15, 2003