throneberry v. state

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-079-CR

ORVELL DANIEL THRONEBERRY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

------------

OPINION ON APPELLANT’S PETITION

FOR DISCRETIONARY REVIEW

------------

I.  Introduction

On February 28, 2002, we issued an opinion and judgment affirming the trial court’s judgment against Appellant Orvell Daniel Throneberry for evading arrest and sentencing him to twenty-five years’ confinement.  
Throneberry v. State
, 72 S.W.3d 389 (Tex. App.—Fort Worth 2002, pet. dism’d).  The Texas Court of Criminal Appeals granted Throneberry habeas corpus relief to file an out-of-time petition for discretionary review, which he has done.  Pursuant to Texas Rule of Appellate Procedure 50, we withdraw our February 28, 2002 opinion and judgment and substitute the following modified opinion and accompanying judgment.  
Tex. R. App. P
. 50.

 Throneberry appeals his conviction and twenty-five-year sentence for felony evading arrest.  Throneberry asserts three points:  (1) the trial court lacked jurisdiction to try the instant offense as a third degree felony under penal code section 38.04 because Throneberry’s prior evading arrest conviction was not a “final conviction”; (2) the trial court erred in overruling Throneberry’s motion for instructed verdict because there was insufficient evidence that the officer who arrested Throneberry was “attempting a lawful arrest” as alleged in the indictment; and (3) Throneberry’s prosecution for felony evading arrest violated 
Brooks v. State
, 921 S.W.2d 875, 879 (Tex. App.—Houston [14
th
 Dist.] 1996), 
aff’d
, 957 S.W.2d 30 (Tex. Crim. App. 1997), because the State did not plead its notice of intent to include a sentence enhancement paragraph “in some form.”  We sustain Throneberry’s third pont, reverse the trial court’s judgment, and remand this cause to that court for a new punishment hearing.

II.  Factual and Procedural Background

On March 6, 1999, Officer Art Ferguson investigated a vandalism call.  The officer encountered Throneberry’s car exiting an alleyway and “fishtailing” as it accelerated into the street.  Though the officer began to pursue Throneberry’s vehicle with his squad car lights and siren on, Throneberry fled.  After a high-speed vehicle chase and a chase on foot, the officer finally apprehended and arrested Throneberry. 

Throneberry’s trial took place on January 10 and 11, 2001.  Throneberry had previously been convicted of felony aggravated assault with a firearm and two other felony convictions for theft.  Throneberry had also pled guilty to a charge of evading arrest in 1992, a Class B misdemeanor, for which he received a five-day probated jail sentence.  Because of Throneberry’s prior evading arrest conviction, the primary evading arrest charge was elevated to third degree felony status under penal code section 38.04.  
Tex. Penal Code Ann.
 § 38.04(b)(2)(A) (Vernon 2003).  Due to Throneberry’s three prior felony convictions, his sentence was enhanced to a minimum of twenty-five years under section 12.42(d) of the penal code. 
 Id
. § 12.42(d). 

III.  Jurisdiction

In his first point, Throneberry asserts that the trial court lacked jurisdiction over the instant case because the prior evading arrest charge used to enhance the instant offense from a misdemeanor to a third degree felony resulted in probation rather than a “final conviction.”  The elements of the offense of felony evading arrest under section 38.04(a), (b)(2) are:  (1) the actor intentionally fled from a person he knew was a peace officer attempting to lawfully arrest him; (2) the actor used a vehicle in fleeing from the officer; and (3) the actor had been previously convicted under section 38.04.  
Id
. § 38.04(a), (b)(2)(A).  The language in section 38.04(b)(2) that makes the offense of evading arrest a third degree felony is presented as an 
element
 of the felony offense itself, rather than as an enhancement provision, such as can be found in section 12.42 of the penal code.
  See id.
 § 12.42 (providing penalties for repeat and habitual felony offenders);
 State v. Atwood
, 16 S.W.3d 192, 196 (Tex. App.—Beaumont 2000, pet. ref’d) (holding “a prior offense of evading arrest is an 
element
 of the offense of felony evading arrest”) (emphasis added)
.

Throneberry argues the well-established principle espoused in 
Ex parte Murchison
, that a conviction is not final for enhancement purposes where the imposition of sentence has been suspended and probation granted, applies in his case.  
560 S.W.2d 654, 656 (Tex. Crim. App. 1978).
  However, Throneberry ignores a fine distinction set forth in 
Murchison
 and its progeny, which is that an order of probation, though it may not be considered a “
final
 
conviction
” for enhancement purposes, is nonetheless a 
conviction.  In other words, 

It is well-settled that a probated sentence is not a final conviction for 
enhancement purposes
 unless it is revoked.  When a defendant receives “regular” probation . . . he is 
convicted
 and punishment is assessed.  However, the imposition of the sentence is suspended, and the conviction does not become final for purposes of enhancement unless the probation is revoked.  [Emphasis added.]

Ex parte Langley
, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992) (citations omitted); 
see also Murchison
, 560 S.W.2d at 656.

Because Throneberry’s prior evading arrest conviction is an 
element
 of the instant offense, rather than a means by which the instant offense is merely 
enhanced
, the 
Murchison
 rule requiring that a conviction be final for enhancement purposes does not apply.  The indictment here alleges a previous conviction for evading arrest, which is sufficient to vest the trial court with felony jurisdiction over Throneberry’s case.  “[J]urisdiction vests when the pleadings are submitted to the trial court and contain the requisite number of previous convictions.”  
Atwood
, 16 S.W.3d at 194 (quoting 
Tamez v. State
, 11 S.W.3d 198, 201 (Tex. Crim. App. 2000)).  We
 
overrule Throneberry’s first point.

IV.  Sufficiency of the Evidence

Throneberry’s second point asserts that the trial court erred by overruling his motion for instructed verdict because there was insufficient evidence to  prove he was evading a peace officer who was “attempting lawfully to arrest” him as required by penal code section 38.04.  
See
 
Tex. Penal Code Ann.
 § 38.04.  A challenge to the denial of a motion for instructed verdict is actually a challenge to the legal sufficiency of the evidence.  
Madden v. State
, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990), 
cert. denied
, 499 U.S. 954 (1991); 
Jackson v. State
, 50 S.W.3d 579, 597 (Tex. App.—Fort Worth 2001, pet. ref’d).  Though section 38.04 states that the peace officer must be attempting lawfully to arrest 
or detain
 the defendant, the indictment charging Throneberry with the offense alleged only that the officer was attempting lawfully to 
arrest 
Throneberry.  Therefore, the State was required to prove that Officer Ferguson was attempting to lawfully arrest him. 

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict.  
Cardenas v. State, 
30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); 
Narvaiz v. State
, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 975 (1993).  The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
McDuff v. State
, 939 S.W.2d 607, 614 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). 

Throneberry argues the evidence was insufficient to show Officer Ferguson was “attempting” a “lawful arrest” of him at the moment he emerged from the alleyway and the pursuit began.  As a general rule, police officers must obtain an arrest warrant prior to taking someone into custody.  
DeJarnette v. State
, 732 S.W.2d 346, 349 (Tex. Crim. App. 1987).  However, chapter 14 of the code of criminal procedure provides limited exceptions to this rule.  
Tex. Code Crim. Proc. Ann
. arts. 14.01-.04 (Vernon 1977 & Supp. 2003).  A police officer may make a warrantless arrest for any offense committed in his presence or within his view.  
Id
. arts. 14.01(b), 14.03.  The State argues that article 14.01(b) applies, which justifies a warrantless arrest for a misdemeanor offense being committed in an officer’s presence.  
Id
. art. 14.01(b).

Officer Ferguson testified that he encountered Throneberry’s vehicle around 1:35 a.m. while investigating reports that several windows in cars and buildings in the area had been broken by vandals throwing rocks and bricks.  Ferguson observed Throneberry’s vehicle turn off the street into an alley where Ferguson knew discarded bricks were available.  There was testimony that Ferguson suspected that vandals had been getting the bricks from the area.  Ferguson testified that it was “unusual” for a car to be in an alley at that time of night in downtown Bowie, and felt that it was “suspicious” in light of the vandalism that was taking place in the area.  Ferguson drove around to the end of the alley where he knew Throneberry’s car would have to exit onto Hulme Street.  As Ferguson turned onto Hulme, he observed Throneberry’s car “fishtail” out of the alley without stopping.  Both Officer Ferguson and his passenger, who was a city councilman on a “ride-along,” testified that Throneberry’s headlights were not turned on when he exited the alley.  Ferguson’s police report, however, indicated that Throneberry turned the lights off about 100 yards down the street after he exited the alley.  Ferguson further testified that, when he observed Throneberry’s car fishtail out of the alley, he activated his emergency lights and siren in an attempt to stop Throneberry’s vehicle.

According to these facts, the jury could reasonably have found that Throneberry violated section 545.256 of the transportation code, which provides:  “An operator emerging from an alley, driveway, or building in a business or residence district shall . . . stop the vehicle before moving on a sidewalk or the sidewalk area extending across an alley or driveway.”  
Tex. Transp. Code Ann. 
§ 545.256(1) (Vernon 1999).  Though the testimony reflected that there was no sidewalk crossing in front of the entrance or exit from the alley to the street, Ferguson testified that there was a curb that was “broken by the alleyway so that cars” could enter and exit the alley or pedestrians could walk across.  Though Throneberry refuted the contention, the State argued that the “improved area [where] . . . pedestrians walk” constituted a “sidewalk area” pursuant to section 545.256(1).  The jury could reasonably have agreed with the State’s contention and determined that Throneberry committed an offense in Ferguson’s presence or within his view by failing to stop at the end of the alley before entering the street.

The evidence also shows that Throneberry’s act of “fishtailing” out of the alley is a misdemeanor offense under section 545.420 of the transportation code, which provides that “[a] person may not participate in any manner in … an exhibition of vehicle speed or acceleration.”  
Id
. § 545.420(a)(5).  Though section 545.420 of the transportation code is entitled “Racing on Highway,” courts have rejected the narrow interpretation that the statute only applies where a defendant is involved in some sort of a speed competition with another vehicle.  
Evers v. State
, 576 S.W.2d 46, 49 (Tex. Crim. App. [Panel Op.] 1978) (holding that accelerating a car so that it threw gravel on police car was enough to satisfy exhibition of speed violation); 
Collins v. State
, 829 S.W.2d 894, 896 (Tex. App.—Dallas 1992, no pet.) (holding that accelerating a car so that it “screeched” and “fishtailed a bit” was sufficient for offense);
 Harris v. State
, 713 S.W.2d 773, 775 (Tex. App.—Houston [1
st
 Dist.] 1986, no pet.) (holding that accelerating a car so that its tires spun when a light turned from red to green was sufficient).  This same line of cases also holds that such offenses committed in an officer’s presence or within his view create probable cause to arrest the defendant without a warrant.  
Evers
, 576 S.W.2d at 49 & n.1; 
Collins
, 829 S.W.2d at 897; 
Harris
, 713 S.W.2d at 775.  Officer Ferguson testified that when he observed Throneberry’s vehicle exit the alley at such a rate of speed as to cause the car to fishtail, he believed it was a traffic violation.  Accordingly, the jury could reasonably have believed that Throneberry committed an offense in Ferguson’s presence or within his view by fishtailing from the alley into the street.

Further, it is an offense to drive without the headlights of a car illuminated at night.  
Tex. Transp. Code Ann. 
§ 547.302(a)(1) (“A vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle . . . at nighttime.”).  Though the testimony was conflicting, there was testimony from Ferguson and the councilman that Throneberry’s lights were off when he fishtailed from the alley into the street.  If the jury chose to believe such testimony, Throneberry committed yet another offense in Ferguson’s presence or within his view that created probable cause for the officer to lawfully arrest Throneberry.

In light of the testimony in the record, the evidence was sufficient to sustain Throneberry’s conviction for evading arrest.  Because the evidence demonstrates that Throneberry committed at least one misdemeanor offense in Officer Ferguson’s presence or within his view before the officer initiated his attempt to stop Throneberry, Ferguson could have arrested Throneberry without a warrant.  Because Ferguson could have made a warrantless arrest of Throneberry, the jury could reasonably have concluded that Throneberry was evading an officer who was lawfully attempting to arrest him.  We overrule Throneberry’s second point.

V.  Notice of Enhancement

In his third point, Throneberry complains that the State failed to give proper notice that it would seek an enhanced penalty under section 12.42(d) of the penal code based on Throneberry’s three prior felony convictions because the State merely mailed Throneberry’s counsel a letter of its intent to enhance rather than filing its notice as a pleading “in some form” pursuant to 
Brooks
, 957 S.W.2d at 34
.  The letter the State sent to Throneberry’s counsel stated:

This letter will serve as notice that the State will seek to enhance  [Throneberry’s] punishment under Chapter 12 of the Texas Penal Code with evidence of prior convictions. . . .  Specifically, we will offer evidence that the defendant has previously been convicted [of] . . . Theft Over $750 . . . Aggravated Assault with a Firearm . . . and . . . Theft Over $750. . . .  Since the judgment in Cause No. 044-86 contains an affirmative finding that the offense involved the use of a deadly weapon, a firearm, I believe that the defendant’s punishment range should he be convicted would be 25 to 99, or life. . . .  Let me know if your client is interested in discussing a plea bargain.

Though the State concedes that its notice of intent was never filed with the trial court as a pleading, it maintains that the error is harmless because the letter “conveyed the same notice that would have been given had the document been filed with the clerk.”  The first question for us to decide is whether notice in the form of an informal letter, rather than a pleading, is sufficient notice under the law to enhance Appellant’s sentence.  We conclude it is not.

A.  Sufficiency of the State’s Notice of Its Intent to Enhance

In 
Brooks
, appellant Brooks claimed he did not have adequate notice of the State’s intent to enhance his punishment because an enhancement allegation was not pled in the indictment charging him with the primary offense.  
Id
. at 31
.  Though the enhancement allegation was not included in the indictment itself, the State made a motion to amend the indictment with an enhancement allegation prior to trial.  
Id
.  The trial court ordered the enhancement paragraph added and set forth what the paragraph should say, but the indictment itself was never amended to reflect the addition.  
Id
.  

The court of criminal appeals 
held that such notice need not be pled in the indictment itself to be considered proper notice, so long as the State pled its notice of intent to enhance
 “in some form” prior to trial.  
Id
. at 34.  The court concluded that “the requisite notice was conveyed by the State’s motion [to amend the indictment] and the trial court’s order” even though the indictment itself was never amended to reflect the enhancement allegation.  
Id
. 

Here, there is neither a pleading or motion in the record to indicate that the State sought to have three enhancement allegations added to the indictment nor is there an order indicating that the trial court granted any such request.  The only action the State took to show it gave Throneberry written notice of intent to seek punishment enhancement was to introduce a copy of the letter into evidence 
after
 the guilt-innocence phase of the trial was over.  Prior to this evidence being admitted, the court simply asked Throneberry whether he had received the letter, and, upon Throneberry’s affirmative answer, began to question Throneberry as to whether the allegations of his three prior felony convictions were true.  Throneberry pled “not true” to all three allegations and objected to the State’s use of them to enhance his punishment on grounds that the letter did not constitute proper notice.  The trial court overruled his objection and proceeded to the punishment phase.  During the punishment phase, the State was permitted to prove up the three prior convictions, and the jury was charged accordingly.

Throneberry’s counsel objected on inadequate notice grounds at several points during the proceedings.  First, he objected when the trial court concluded that the letter constituted proper notice.  Subsequently, he objected to the jury charge on punishment, which included the three enhancement grounds.  Under an interpretation of
 Brooks’
 plain language, we cannot conclude that an informal letter admitted into evidence after the guilt-innocence phase constitutes a pleading in any form. 
 Therefore, the State’s notice of its intent to enhance Throneberry’s sentence was not proper.

B.  Harm Analysis

Although Throneberry did not admit to the prior convictions used by the State to enhance his punishment, 
Throneberry and his attorney admitted they received the letter of notice of the State’s intent to enhance Throneberry’s punishment from a third degree felony under section 12.34 of the penal code (with a punishment range of two to ten years) to repeat and habitual offender felony status under section 12.42(d) of the penal code (with a punishment range of twenty-five to ninety-nine years). 
 Tex. Penal Code Ann. 
§§ 12.34, 12.42(d).  The State’s letter to Throneberry’s counsel explaining that his punishment was eligible for enhancement under section 12.42(d) was dated October 8, 1999, and the guilt-innocence phase of Throneberry’s trial did not begin until January 10, 2001.  Consequently, Throneberry received notice of the State’s intent to enhance his punishment well over a year before the time of trial.  Throneberry also does not contend that he was unfairly surprised by or unable to prepare to defend against the State’s attempt to enhance his sentence.  Throneberry’s only claim is that the State failed to properly plead its notice of intent to enhance as required by 
Brooks
, 921 S.W.2d at 879.  We hold that, under the circumstances presented here, the State’s letter notice does not present constitutional error and did not affect Throneberry’s substantial rights.  
See 
Tex. R. App. P.
 44.2(a), (b).

Nonetheless, in 
Brooks
, the case cited and relied upon by Throneberry, the Fourteenth Court of Appeals noted that a discrepancy between allegations in an indictment and allegations in a trial court’s punishment charge, constitutes a variance between the indictment and the jury charge subject to an
 Almanza
 harm analysis.  
Brooks
, 921 S.W.2d at 879 (citing 
Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g)).  Because there was a defect in the charge to which Brooks failed to object, the court applied the 
Almanza 
“egregious harm” analysis, determining whether Brooks was denied a “fair and impartial trial.”  
Id
.
  The appellate court
 held that egregious harm did not result because:  (1) Brooks testified that he had been convicted of the felony being used to enhance his sentence; (2) Brooks was notified “months before his trial” that the State intended to seek an enhanced punishment range; and (3) Brooks did not complain or show that the enhancement allegation surprised him or that he was unprepared to contest the allegation.  
Id
. 

Here, we likewise conclude that there is a variance between the indictment and the jury charge.  Though the State was not required to plead the enhancement allegations in the indictment itself, it was required to plead the enhancement allegations at some point prior to trial.  Throneberry objected to the jury charge’s instruction regarding the enhancement allegations.  Therefore, rather than an “egregious harm” analysis, we must determine whether 
Throneberry suffered “some” harm from the error.  
Almanza
, 686 S.W.2d at 171.  

Appellate review of error in a jury charge involves a two-step process.  
Abdnor v. State
, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error occurred.  If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. 
 Id.
 at 731-32.  Properly preserved error will call for reversal as long as the error is not harmless.  
Almanza
, 686 S.W.2d at 171.  In determining whether harmful error occurred, “the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.”  
Id.

The inclusion of the unpleaded enhancement allegations in the court’s punishment charge changed Throneberry’s possible punishment range from between two and ten years’ confinement to between twenty-five and ninety-nine years’ confinement.  
See
 
Tex. Penal Code Ann.
 §§ 12.34, 12.42(d).  The jury assessed the minimum punishment available under the court’s erroneous charge:  twenty-five years’ confinement.  Additionally, the record reflects that the jury sent out a note during deliberations on Throneberry’s punishment stating:

We’ll agree the defendant was convicted of the three prior felony offenses.  Is verdict form, [No. 1] the only one we can use[?]  
Can we sentence the defendant to less than 25 years on Verdict Form No. 1 . . . or can
[
/
]
should we use another form?
  [Emphasis added.]

Thus, the record before us clearly reflects that the jury wanted to sentence Throneberry to less than twenty-five years’ confinement but, based on the inclusion of the unpleaded enhancement allegations in the court’s punishment phase charge, was deprived of that option.  Because the record before us establishes that the jury gave Throneberry the minimum punishment and desired to use a different verdict form to give him an even lesser punishment, it clearly establishes that Throneberry suffered “some” harm from the charge error.  
Almanza
, 686 S.W.2d at 171.  We sustain Throneberry’s third point.

VI.  Conclusion

We reverse the trial court’s judgment on punishment and remand this case for a new punishment hearing in accordance with article 44.29(b).  
See
 
Tex. Code Crim. Proc. Ann.
 art. 44.29(b) (Vernon Supp. 2003).

DIXON W. HOLMAN

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED: May 15, 2003