# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00190-CR

**Preston James Korell, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
NO. 7955, HONORABLE JOE CARROLL, JUDGE PRESIDING**

## O P I N I O N

A jury found Preston James Korell guilty of possessing methamphetamine in an amount greater than four grams but less than 200 grams with intent to deliver, a first-degree felony. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2003). Korell elected to have the jury assess punishment, and the jury assessed ten years' confinement and a $10,000 fine. Korell's criminal responsibility for the offense was proved primarily through the testimony of two witnesses, William Kaman and Kristin Clem. The district court instructed the jury that Kaman was an accomplice as a matter of law but submitted the question of Clem's status as an accomplice to the jury as a fact question. By two points of error, Korell argues that the trial court should have found that Clem was an accomplice as a matter of law and that, as an accomplice, her testimony could not be used to corroborate Kaman's testimony connecting Korell to the contraband. We will affirm the judgment of conviction.

**BACKGROUND**

On January 23, 2006, William Kaman was driving a truck when he lost control and crashed into the guardrail on the bridge across Antelope Creek on State Highway 190 in western Lampasas County. Kaman was seriously injured and pinned in the vehicle. One of the first persons to arrive at the scene was a delivery truck driver, Charles Burns, who actually saw Kaman's truck come to rest on the bridge. Burns said that he saw the passenger, who he described as a Hispanic man, emerge from the wrecked truck and try to assist the injured driver. The passenger then approached Burns and told him that he needed help in hiding a deer rifle, stating that "he couldn't be caught with it." According to Burns, the passenger then left in the direction of San Saba with one of "two other Hispanic guys" who had arrived on the scene prior to the arrival of law enforcement.

Department of Public Safety Trooper Michael Tatum testified that he arrived to investigate the accident and, after speaking with Burns, began searching the area for the rifle. Tatum stated that he searched the area under the bridge and found the rifle in the creek bed, alongside a backpack and a camera bag containing packages of methamphetamine[1] and assorted drug paraphernalia. He testified that the location of the rifle and the bags containing the drugs suggested that the items had been dropped from the bridge above and slid down an incline into the creek bed. Prior to Kaman being starflighted to Austin for treatment, Trooper Tatum asked Kaman to identify the passenger who was with him, and Kaman said, "Mesa."

On two separate occasions, law enforcement officials showed Burns photo spreads containing suspects. The first time, Korell's photo was not included in the array and Burns identified

---

[1] In total, 70.8 grams (about 2.5 ounces) of methamphetamine were recovered at the scene.

one of the men in the photographs as being the passenger. The second time, Korell's photo was included in the array. Burns, however, did not identify Korell as the person he had spoken to at the accident site. There was no physical evidence linking Korell to the accident scene or to the contraband.

At Korell's trial, the State attempted to prove that Korell had been the passenger in Kaman's truck and was therefore linked to the drugs found near the accident site through the testimony of Kristin Clem and William Kaman. Clem testified that on January 23, 2006, she was at a house in San Saba County, along with Randy Carr and John Storm, when Kaman and Korell arrived in a truck and purchased two and half ounces of methamphetamine from Carr.[2] Kaman and Korell then left the house together. Later that same day, Clem, Carr, and Storm were at a gas station in San Saba when a silver champagne Chevy truck driven by a Hispanic man drove up with Korell as the passenger. According to Clem, Korell told her about the accident and said that he had "stashed" the methamphetamine and the gun. Clem gave the driver of the Chevy truck twenty dollars "for gas money for dropping [Korell] off." Clem and Carr then left in Carr's vehicle to go to Dallas; Korell and Storm left the gas station in Clem's vehicle to return to Austin. Clem testified that Korell is also known as "Mesa." Clem further testified that in January 2006 she was employed as a confidential informant by the Round Rock Police Department working on methamphetamine cases, although she denied working as a confidential informant on that particular day. She admitted

---

[2] The house in question, according to Clem, was a double-wide trailer owned by Randy Carr's sister.

to knowing what was going on at the house—that there were illegal drugs present and that Korell and Kaman were there to purchase drugs from Carr.

Kaman admitted on the stand that he and Korell had traveled from Austin to San Saba to pick up a supply of methamphetamine. Kaman said that they both went into the house, Kaman "got high," and then he and Korell left together with the drugs that Korell had just purchased. Kaman said that before they left Austin, Korell had talked to Clem about going to the San Saba house and getting the drugs. Kaman did not recall much about the accident. He was badly injured and a portion of his leg had to be amputated. The police talked to him after he was out of the hospital and he made two written statements that were admitted into evidence at the trial. In his first statement, Kaman denied being a party to buying drugs and identified his passenger by the name of Mesa. In a second statement, he identified his passenger as Preston Korell. Both of these sworn statements contained inconsistences from Kaman's testimony at trial as to Kaman's complicity in the purchase of the drugs.

At the close of the evidence, defense counsel moved for a directed verdict, arguing that both Kaman and Clem were accomplices as a matter of law and that there was no other evidence that tended to connect Korell to the contraband. Specifically, the defense argued that Clem was an accomplice based on "her testimony that she participated in the original sale of narcotics" that provided the basis for this prosecution and, further, because she assisted Korell in avoiding apprehension after the accident. The State admitted that Kaman was an accomplice as a matter of law but argued that Kaman's own out-of-court statements identifying the passenger as Mesa and later as Korell provided sufficient corroboration for his in-court testimony. As for Clem, the State told the trial court that "she may be an accomplice to an offense in San Saba County but she is not to the

4

offense committed in Lampasas County." The trial court overruled Korell's motion for directed verdict, making a finding that Kaman was an accomplice as a matter of law; however, the court did not find that Clem was an accomplice as a matter of law but instead submitted Clem's status as an accomplice to the jury to be determined as a fact issue.

## DISCUSSION

Korell contends in his first issue that Clem is an accomplice as a matter of law and that her testimony cannot be used to corroborate Kaman's testimony; thus, the trial court erred in failing to grant Korell's motion for a directed verdict. In his second issue, he complains that the evidence was insufficient to allow the jury to find that Clem was an accomplice as a matter of fact.

**Standard of Review**

In Texas, a conviction cannot be had upon the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005). The testimony of an accomplice witness is inherently untrustworthy and should be received and acted on with caution because it is "evidence from a corrupt source."[3] *Walker v. State*, 615 S.W.2d 728, 731 (Tex. Crim. App. 1981); *Wincott v. State*, 59 S.W.3d 691, 698 (Tex. App.—Austin 2001, pet. ref'd). This accomplice-witness

---

[3] Wigmore explained the policy behind the rule as follows:

> The reasons which have led to this distrust of an accomplice's testimony are not far to seek. He may expect to save himself from punishment by procuring the conviction of others. It is true that he is also charging himself, and in that respect he has burned his ships. But he can escape the consequences of this acknowledgment, if the prosecuting authorities choose to release him, provided he helps them to secure the conviction of his partner in crime.

> 7 Wigmore, Evidence § 2057 (Chadbourn rev. 1978), at 417.

5

rule creates a statutorily imposed review and is not derived from federal or state constitutional principles that define the factual and legal sufficiency standards. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Thus, to weigh the sufficiency of the corroborative evidence, we disregard the accomplice's testimony and examine the remaining portions of the record to ascertain whether there is evidence tending to connect the accused with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Maynard v. State*, 166 S.W.3d 403, 410 (Tex. App.—Austin 2005, pet. ref'd). Because the standard is "tendency to connect," rather than a rational-sufficiency standard, the corroborating evidence need not be sufficient by itself to establish guilt beyond a reasonable doubt. *Id.* If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, then the requirement of article 38.14 has been fulfilled. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). However, evidence that merely proves that the offense was committed does not suffice. *Id.* We review a claim that accomplice-witness testimony is insufficiently corroborated in the light most favorable to the verdict. *See Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994).

**Determining Accomplice Status**

"An accomplice is an individual who participates with a defendant before, during, or after the commission of the crime and acts with the requisite culpable mental state." *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). Further, the accomplice witness's participation must involve an affirmative act that promotes the commission of the offense with which the defendant is charged. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). There must be sufficient

6

evidence to connect the alleged accomplice to the criminal offense as a "blameworthy participant." *Id.* (quoting *Blake v. State*, 971 S.W.2d 451, 454-55 (Tex. Crim. App. 1998)). Whether the alleged accomplice-witness is actually charged or prosecuted for his participation is irrelevant to the determination of accomplice status; rather, we look to see if there is sufficient evidence in the record "to support a charge against the witness alleged to be an accomplice." *Blake*, 971 S.W.2d at 455. "Mere presence at a crime scene does not make an individual an accomplice, nor is an individual an accomplice merely because he has knowledge about a crime and fails to disclose that knowledge." *Cocke*, 201 S.W.3d at 748. Moreover, a person's complicity with the accused in the commission of another offense, apart from the offense charged, does not make him an accomplice. *Druery*, 225 S.W.3d at 498.

"A witness may be an accomplice either as a matter of law or as a matter of fact; the evidence in a case determines what jury instruction, if any, needs to be given." *Cocke*, 201 S.W.3d at 747. An individual is an accomplice as a matter of law if he could be prosecuted for the same offense with which the defendant is charged, or a lesser-included offense of that charge. *Druery*, 225 S.W.3d at 498; *Cocke*, 201 S.W.3d at 748. Unless the evidence clearly shows that the witness is an accomplice as a matter of law, a question about whether a particular witness is an accomplice is properly left to the jury with an instruction defining the term "accomplice." *Id*. at 748. Even if the evidence weighs in favor of the conclusion that the witness is an accomplice as a matter of law, the trial court may still submit the issue to the jury if it has any doubt as to whether a witness is an accomplice witness. *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986).

If the trial court determines that a witness is an accomplice as a matter of law, the court is required to provide an accomplice-witness instruction to the jury. *DeBlanc v. State*,

799 S.W.2d 701, 708 (Tex. Crim. App. 1990). But when the parties present conflicting or unclear evidence as to whether a witness is an accomplice, the jury must first determine whether the witness is an accomplice as a matter of fact. *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998). Whether an accomplice-witness instruction is justified requires a case-specific and fact-specific inquiry. *Cocke*, 201 S.W.3d at 748.

Because Clem had not been indicted, she was an accomplice-witness as a matter of law only if the evidence shows that she could be prosecuted for the same offense as Korell or for a lesser-included offense of that charge. Korell was charged with the possession of 70.8 grams of methamphetamine with intent to deliver; a lesser-included offense of that charge would be simple possession. *See Upchurch v. State*, 23 S.W.3d 536, 538 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). A person is guilty of possession if he knowingly or intentionally exercises actual care, control, custody, or management over a controlled substance. *See* Tex. Health & Safety Code Ann. §§ 481.002(38), .115(a) (West Supp 2007); Tex. Penal Code Ann. § 1.07(a)(39) (West Supp. 2007). Because of the lack of evidence showing that Clem exercised actual control or management over any of the drugs at issue, let alone possessed them with intent to deliver, her criminal liability, if any, must arise under the law of parties. *See, e.g.*, *Sewell v. State*, 578 S.W.2d 131, 136 (Tex. Crim. App. 1979). A person may be shown by circumstantial evidence to be a party to the possession of a controlled substance, viewing the evidence of events before, during, and after commission of the offense. *Gutierrez v. State*, 628 S.W.2d 57, 66-67 (Tex. Crim. App. 1982). In determining whether one has participated as a party, reliance may be placed on actions of the parties which show an understanding and common design to do a certain act. *Id.* (quoting *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex. Crim. App. 1978)).

8

Based on her own testimony, Clem knew that illegal drugs were in the San Saba house, was aware of Korell and Kaman's purpose in coming to the house, and was present during the drug transaction between Korell and Carr. Further, Kaman testified that prior to leaving Austin, Korell had a conversation with Clem about going to the San Saba house to purchase drugs. Reviewing all of the testimony regarding her participation before and during the commission of the offense, we do not think that the evidence is sufficient to clearly support a charge against Clem for possession, making her an accomplice as a matter of law. *See Blake*, 971 S.W.2d at 455. Neither Clem's presence at the San Saba house nor her knowledge that Korell was purchasing drugs from Carr (and failure to report that offense to authorities) makes her an accomplice to Korell's possession. *See Cocke*, 201 S.W.3d at 748. If anything, the evidence that she coordinated Korell's meeting with Carr establishes that she was complicit *with Carr* in the offense of delivery of a controlled substance;[4] however, a person's complicity in the commission of another offense, apart from the offense charged, does not make him an accomplice to the charged offense. *See Druery*, 225 S.W.3d at 498.

Korell also contends that Clem's conduct after the accident is evidence that she was a party to his possession of methamphetamine. In so arguing, he points to the fact that Clem gave money to the driver who gave Korell a ride from the accident scene and that she provided her own truck for Korell to use when he needed transportation. Korell maintains that because Clem testified that Korell told her that he had "stashed the dope," Clem's actions are evidence of her participation

---

[4] Under the law of parties, Clem's conduct could arguably be characterized as an effort to solicit, encourage, direct, aid, or attempt to aid the offense of delivery, based on Kaman's testimony that she was in contact with Korell and that she was acting as a go-between for Korell and Carr. *See, e.g.*, *Lecrone v. State*, 889 S.W.2d 585, 587 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).

in furtherance of his offense because she would have assumed that Korell would try to recover the stashed methamphetamine. Clem testified, however, that when she allowed Korell to borrow her truck, Korell "went to Austin." There is no evidence that Korell actually returned to the accident scene to recover the drugs, or that Clem believed he would do so. Without evidence that Clem intended by her conduct to help Korell possess (or repossess) the drugs that were left at the scene of the accident, we cannot conclude that Clem encouraged or aided Korell in committing the charged offense.

While Clem's testimony might be viewed as inconsistent concerning her role in Carr's alleged drug-dealing activities and her involvement with these individuals in her capacity as a confidential informant for the Round Rock police department, the evidence as a whole does not clearly establish that she was susceptible to prosecution for possession of a controlled substance or possession with intent to deliver.[5] Because the evidence does not clearly show that Clem was an accomplice to Korell's offense or a lesser-included charge, her status as an accomplice was properly left to determination by the jury as a fact issue. *See Cocke*, 201 S.W.3d at 748. Accordingly, the trial court did not err in denying Korell's motion for a directed verdict on the basis that Clem was an accomplice as a matter of law and submitting the issue of her accomplice status to the jury. We overrule Korell's first issue.

---

[5] The defense never contended, nor was there any evidence, that Clem was acting as a confidential informant on the day in question. If she had been, the code of criminal procedure requires that her testimony be corroborated "by other evidence tending to connect the defendant with the offense committed." *See* Tex. Code Crim. Proc. Ann. art. 38.141 (West 2005). At least one court has held that an informant's testimony may not be used to corroborate an accomplice's testimony, and vice versa. *See Patterson v. State*, 204 S.W.3d 852, 859 (Tex. App.—Corpus Christi 2006, pet. ref'd).

**Sufficiency of the Evidence**

In his second point of error, Korell argues that even if Clem was not an accomplice as a matter of law, the evidence shows that she was an accomplice as a matter of fact. Therefore, because her testimony could not be used to corroborate Kaman's testimony—including Kaman's identification of Korell as "Mesa," his passenger—the evidence supporting Korell's conviction is insufficient. As we understand it, Korell's challenge addresses the factual sufficiency of the jury's implied finding that Clem was not an accomplice as a matter of fact. Evidence is factually insufficient if it is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or, after considering the conflicting evidence, the jury's verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Unless the record clearly reveals that a different result is appropriate, we defer to the jury's determination concerning the weight to place upon conflicting testimony. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

By its verdict, the jury found that Clem was not an accomplice as a matter of fact. *See McDonald v. State*, 513 S.W.2d 44, 48 (Tex. Crim. App. 1974). The jury heard evidence that Korell contacted Clem about going to the San Saba house to purchase drugs, that Clem was present when Korell purchased the drugs from Carr, and that Clem helped Korell secure transportation back to Austin after he stashed the drugs at the accident scene. However, there was no testimony indicating that Clem and Korell had a common scheme or plan to possess or deliver the drugs together once he acquired them from Carr or that she had any pecuniary interest in Korell's future sales of the drugs. Rather, Clem testified that while she was aware that Korell was acquiring drugs and was present during the sale of 2.5 ounces of methamphetamine, awareness and presence are

11

clearly insufficient to establish her liability as a party. Moreover, the jury could reasonably have concluded that Clem's liability as a party to any of the possible offenses committed ended when Korell took possession of the drugs and left the San Saba house with Kaman. In addition, the evidence rationally supports an inference that Korell had already relinquished possession of the drugs at the accident scene without intending to repossess them by the time he came upon Clem and Carr at the gas station, undermining Korell's assertion that she was encouraging, aiding, or attempting to aid his offense by allowing him to use her truck.

We have already held that, under the facts of this case, Clem was not shown to be an accomplice-witness as a matter of law. Thus, her status as an accomplice-witness was a question of fact, the trial court properly charged the jury on the issue, and the jury resolved that question against Korell, as it was entitled to do based on the evidence presented. Having reviewed all of the evidence, giving proper deference to the jury on matters of weight and credibility, we do not think that the jury's finding on this issue was clearly wrong, manifestly unjust, or against the great weight and preponderance of the evidence. Thus, it was appropriate for Clem's testimony to be considered for the purpose of corroborati ng Kaman's testimony. As corroborating evidence, Clem's testimony satisfies the requirement of tending to connect Korell to the charged offense.[6] *See Cathey*, 992 S.W.2d at 462. Viewing Korell's claim in the light most favorable to the jury's verdict, we hold

_____

[6] The State argues in the alternative that even if Clem was an accomplice as a matter of law, Kaman's testimony was still corroborated by other evidence—namely, Kaman's own out-of-court statements that he made to police prior to Korell's trial when he identified Korell as his passenger. The State's argument is flawed, however, because "an accomplice cannot corroborate himself by his own statements made to third persons." *See McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997) ("hearsay from an accomplice cannot corroborate the accomplice's trial testimony"); *see also Maynard v. State*, 166 S.W.3d 403, 414 n.6 (Tex. App.—Austin 2005, pet. ref'd).

12

that Kaman's accomplice testimony was sufficiently corroborated, *see Hernandez,* 939 S.W.2d at 176; *Gill*, 873 S.W.2d at 48, and overrule Korell's second issue.

## CONCLUSION

Because Korell was not entitled to a directed verdict on the basis that the State's witness, Kristin Clem, was an accomplice as a matter of law, and because the evidence was sufficient to support the jury's finding that she was not an accomplice as a matter of fact, we affirm the judgment of conviction.

_____

Diane Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   April 24, 2008

Publish

13