# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-08-00726-CR
---

**Dwayne Anthony McGruder, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 62162, HONORABLE JOE CARROLL, JUDGE PRESIDING
---

### M E M O R A N D U M   O P I N I O N

The district court convicted Dwayne Anthony McGruder of the offense of evading

arrest. *See* Tex. Penal Code Ann. § 38.04 (West 2003). Punishment was assessed at nine months

in state jail. In a single point of error, McGruder challenges the sufficiency of the evidence.[1] We

will affirm the judgment.

---

[1] In his brief, McGruder labels his point of error as a challenge to the factual sufficiency of the evidence, and he refers only to the standard of review for factual sufficiency. However, the substance of his argument more closely resembles a challenge to the legal sufficiency of the evidence. Additionally, McGruder prays for a judgment of acquittal, the remedy for legal insufficiency, rather than a new trial, the remedy for factual insufficiency. Because McGruder's brief could be construed as challenging either the legal or factual sufficiency of the evidence, we will address both. *See* Tex. R. App. P. 38.1(f).

## BACKGROUND

The district court heard evidence that on the evening of November 1, 2007, Officers Richard Bradley and Luis Osorio of the Killeen Police Department were patrolling the streets of Killeen when their attention was drawn to the parking lot of a convenience store. According to Bradley, in the past he had "had numerous calls to that store and citizen contacts at that store in reference to narcotics activity. This particular day there was a lot of traffic in front of the store, a lot of vehicles, a lot of people standing outside. And, so, we decided to just walk through the parking lot to see what was going on."

When the officers pulled into the parking lot, they "heard some loud music coming from a vehicle." Bradley identified the vehicle as an "older model blue Cadillac." The officers observed the vehicle leave the parking lot, and they followed it onto the street and initiated a traffic stop. Osorio, an officer trainee who was driving the patrol car, testified that the purpose of the stop was to inform the occupant of the vehicle about a city ordinance prohibiting loud music. On cross examination, Osorio testified that they had no intention of arresting or even giving anyone a citation at that point; they were intending only to warn the driver about the noise coming from the vehicle.

Osorio approached the vehicle while Bradley remained in the patrol car. The driver of the vehicle was identified as McGruder. Osorio explained that when McGruder lowered his window to speak with him, "a lot of smoke came out of the vehicle." Osorio testified that he did not know what kind of smoke it was and, at that time, he did not suspect that it was marihuana smoke.

2

Osorio recalled,

> At that time I asked Mr. McGruder if he was smoking in the vehicle. I also asked him if there was anything in the vehicle that I needed to know about. He told me, no there wasn't. I asked him if he minded if I checked the vehicle. He also told me there was nothing for me to check.

Osorio informed McGruder about the city ordinance and told him to "sit tight" while he checked McGruder's driver's license. Osorio then returned to his vehicle, told Bradley about the smoke, and asked him if he could "check the vehicle." Bradley advised Osorio against doing so, but decided to talk to McGruder himself.

When Bradley approached McGruder, he noticed that McGruder was talking on his cell phone and "would not really acknowledge my position there next to the vehicle." Bradley asked McGruder "several times to end the phone call," but McGruder "refused to do so." Bradley also noticed that McGruder "was sweating profusely" despite the fact that "it was approximately 60 degrees that evening." Additionally, Bradley testified, McGruder "had a burned cigarette over his left ear, yet he was smoking a second lit cigarette to the point where he was inhaling deeply, exhaling the smoke in the vehicle, placing his cigarettes in the ashtray, picking it back up, inhaling, exhaling." Bradley further observed that McGruder's "heart was beating hard enough to actually see the movement of the heart through the shirt that he was wearing."

Bradley looked into the vehicle and observed that when McGruder was putting the cigarette into the ashtray, "he was intentionally putting it to the far side away from an object in the ashtray." Then, Bradley testified,

When I moved my flashlight and looked at that object in the ashtray, it appeared to be what is commonly referred to as a 'marihuana blunt' or a cigar that has been cut open, the contents removed and replaced with marihuana. Also, in the center area of the seat was a piece of a corner of a clear plastic baggie that had been torn off which is also consistent with someone who has had marihuana.

On cross, Bradley testified that although he thought the object he had observed was a marihuana blunt, he could not be certain at that time if it was anything more than a "[c]igar-type pipe." He also testified that the baggie he had observed was small, "probably between half and three-quarters of an inch," and that possessing such a bag was not illegal.

After observing the objects in the car, Bradley asked McGruder to exit his vehicle. According to Bradley, "He refused to do so at which point I went ahead and opened the door. Immediately after opening the door, he reached toward the door to grab it and attempt to close the door." As Bradley tried to prevent McGruder from closing the door, Bradley saw McGruder's right hand "move up to the gear selector which led me to believe he was fixing to take off." In an attempt to prevent McGruder from leaving, Bradley deployed his pepper spray on the left side of McGruder's face. Despite being pepper-sprayed, Bradley testified, McGruder "took off" in his vehicle. Bradley ran back to the patrol car, and a pursuit ensued.

According to Bradley, the officers pursued McGruder for "approximately a mile" through a residential area. Eventually, McGruder pulled into a driveway at the address where he lived. Bradley explained that McGruder exited the vehicle and then, as Bradley was approaching him with his weapon drawn, returned to the vehicle and grabbed an unknown item. McGruder exited the vehicle again and proceeded to run southbound to a six-foot privacy fence. Bradley testified that McGruder "vaulted the fence." The officers "kicked open the gate to the fence," found

4

McGruder in the backyard, and ordered him to the ground. According to Bradley, "He did not comply at that point. We forced him to the ground. He continued to wrestle, and he was finally placed in handcuffs."

McGruder was charged with the offense of evading arrest with a motor vehicle. McGruder waived his right to a jury trial. The district court found him guilty as charged and sentenced him to nine months in state jail. This appeal followed.

**ANALYSIS**

In his sole point of error, McGruder challenges the sufficiency of the evidence supporting the district court's finding of guilt. According to McGruder, the State presented insufficient evidence that the officers were attempting a "lawful arrest" at the time McGruder fled in his vehicle. This is the only element of the offense that McGruder challenges.

In a legal sufficiency review, we consider whether, after viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "This standard accounts for the factfinder's duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Clayton*, 235 S.W.3d at 778 (quoting *Jackson*, 443 U.S. at 319). It is not necessary that every fact point directly and independently to the defendant's guilt, but it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

In a factual sufficiency review, we consider whether, after viewing the evidence in a neutral light, a rational trier of fact was justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). "A verdict should be set aside only if the evidence supporting the verdict is so weak as to render the verdict clearly wrong or manifestly unjust." *Id*. at 705; *Korell v. State*, 253 S.W.3d 405, 412 (Tex. App.—Austin 2008, pet. ref'd). Therefore, we will not reverse a judgment on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *Watson*, 204 S.W.3d at 417.

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. Tex. Penal Code Ann. § 38.04(a) (West 2004). However, in this case, the indictment alleged only that Officer Osorio was attempting to lawfully arrest McGruder. The indictment contained no language about Osorio attempting to detain him. Therefore, the State was required to prove that Osorio was attempting to lawfully arrest McGruder. *See Throneberry v. State*, 109 S.W.3d 52, 56 (Tex. App.—Fort Worth 2003, no pet.).

In Texas, a warrantless arrest is lawful only when (1) probable cause for the arrest exists; and (2) at least one of the statutory exceptions to the warrant requirement is met. *McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003). One such exception is that a peace officer may arrest an offender without a warrant for any offense committed in his presence or within his

6

view. Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2005).[2] "The test for probable cause for a warrantless arrest under [article 14.01(b)] is whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002) (quoting *Beverly v. State*, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990)). An offense is deemed to have occurred within the presence or view of an officer when any of his senses afford him an awareness of its occurrence. *Id*. (citing *Clark v. State*, 35 S.W.2d 420, 422 (1931)).

In arguing that the evidence is insufficient to show that the officers were attempting to lawfully arrest him, McGruder asserts that "the trial record is clear that the officers stopped the Appellant's vehicle due to loud music," and that it is "undisputed that the officers intended simply to warn the Appellant of the city ordinance related to loud music." In McGruder's view, "[t]he record is void of any evidence that either officer changed his mind about the decision to only warn the Appellant of a possible violation." "If the city ordinance is valid," McGruder continues, "then the officers likely had the authority to briefly <u>detain</u> the Appellant to warn."

The above argument is based on the premise that the offense on which the district court relied in finding McGruder guilty of evading arrest was the violation of the

---

[2] In his brief, McGruder cites to another exception, article 14.03, which provides that a peace officer may arrest, without a warrant, "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under Section 49.02, Penal Code, or threaten, or are about to commit some offense . . . ." Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (West 2003). We need not address the applicability of this exception.

7

city ordinance. However, the record supports a finding by the district court that the officers were attempting to lawfully arrest McGruder for another offense, namely, marihuana possession. *See* Tex. Health & Safety Code Ann. § 481.121 (West 2003). Although the officers testified that their original purpose for stopping McGruder was to warn him about violating the city ordinance, the district court could have reasonably inferred that this purpose changed during the course of McGruder's detention. Osorio testified that when McGruder lowered his window to speak with him, "a lot of smoke came out of the vehicle." Osorio then warned McGruder about the ordinance, told him to "sit tight," and walked back to his patrol car to check McGruder's license. When Osorio returned to the patrol car and informed Bradley about the smoke, Bradley decided to speak with McGruder himself. At this point, the district court could have reasonably inferred, the purpose of the detention had shifted from warning McGruder about the ordinance to investigating whether McGruder was involved in criminal activity.

Prior to attempting to arrest McGruder, the officers had observed the following:

- The vehicle in which McGruder was driving was coming from a convenience store in which Bradley had "had numerous calls to that store and citizen contacts at that store in reference to narcotics activity."

- Osorio testified that when McGruder rolled down his window to talk to him, "a lot of smoke came out of the vehicle."

- Bradley testified that when he approached McGruder, McGruder was talking on his cell phone and "would not really acknowledge my position there next to the vehicle." McGruder, according to Bradley, also refused to end the call despite repeated requests from Bradley to do so.

- Bradley also testified that McGruder "was sweating profusely" despite the fact that "it was approximately 60 degrees that evening."

8

- According to Bradley, McGruder "had a burned cigarette over his left ear, yet he was smoking a second lit cigarette to the point where he was inhaling deeply, exhaling the smoke in the vehicle, placing his cigarettes in the ashtray, picking it back up, inhaling, exhaling."

- Bradley further observed that McGruder's "heart was beating hard enough to actually see the movement of the heart through the shirt that he was wearing."

- When Bradley looked inside the vehicle, he observed what appeared to be a marihuana blunt and a clear plastic baggie which Bradley testified was "consistent with someone who has had marihuana." Bradley testified that the marihuana blunt was in an ashtray within McGruder's reach.

McGruder contends that none of the above facts would constitute an arrestable offense. However, viewing the evidence in the light most favorable to the verdict, the district court could have found that the totality of the above circumstances provided the officers with probable cause to arrest McGruder for committing in their presence the offense of marihuana possession. *See, e.g.*, *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (noting that evidence tending to show that person possessed contraband includes "whether the contraband was in plain view," "the defendant's proximity to and the accessibility of the narcotic," and "whether the defendant was under the influence of narcotics"); *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005) (observing that Texas courts apply a "totality of the circumstances" test for determining if probable cause for warrantless arrest exists); *McGee*, 105 S.W.3d at 614 (holding that officer had probable cause to arrest defendant under article 14.01(b) based on factors such as presence of marihuana smoke in air and marihuana cigarette on ground next to defendant); *Josey v. State*, 981 S.W.2d 831, 839-41 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding officers were justified in making warrantless arrest under article 14.01(b) after they detained defendant and discovered cocaine behind

dashboard of his car); *see also Texas v. Brown*, 460 U.S. 730, 742-43 (1983) (holding that probable cause requires only "reasonable belief" that certain items may be contraband; "it does not demand any showing that such a belief be correct or more likely true than false"). Thus, the evidence is legally sufficient to support a finding by the district court that the officers were attempting to lawfully arrest McGruder.

We reach the same conclusion when considering the evidence in a neutral light. The evidence contrary to the verdict consists of Osorio's testimony on cross that he did not know what kind of smoke was coming from McGruder's vehicle, and Bradley's testimony on cross that he was not certain that the "cigar-type pipe" he observed in McGruder's vehicle was a marihuana blunt. It would not be against the great weight and preponderance of the evidence for the district court to discount this testimony in light of the other evidence supporting the officers' probable cause determination, including McGruder's apparent ignorance of Bradley's presence and his disregarding of Bradley's requests to end his phone call; the physical symptoms McGruder exhibited suggesting drug use; and the fact that McGruder was observed leaving a location in which Bradley had received "numerous calls . . . in reference to narcotics activity." Additionally, the district court could have discounted Osorio's inability to determine the kind of smoke he had observed based on Osorio's prior testimony that at the time of the arrest, he was only an officer in training. Also, even though Bradley was not "certain" that what he had observed was a marihuana blunt, the district court could have chosen to credit Bradley's earlier testimony that he believed the object was in fact a marihuana blunt. Bradley testified that he had been a police officer since 1994. It would not have been "manifestly unjust" for the district court to infer from this evidence that Bradley had experience

10

identifying marihuana blunts. Bradley also testified that he could identify the "traits" of a marihuana blunt: "The traits of a blunt having been cut open is that when it's put back together, it's tightly wrapped. More tightly wrapped than the smaller diameter of a cigar." It would not have been "manifestly unjust" for the district court to infer from this evidence that Bradley was able to distinguish ordinary cigars from marihuana blunts.

McGruder also asserts that Bradley testified that he was merely attempting to detain McGruder after Bradley discovered the objects in the vehicle, and that Bradley "mentioned nothing about attempting to arrest the Appellant at that time." McGruder refers to the following exchange during Bradley's cross-examination:

> Q: And at that time you were attempting to detain him to investigate further about this blunt you thought that it was and the Baggie and that thing, right?
>
> A: Yes, sir.
>
> Q: You were going to arrest him. You were going to detain him and further investigate, correct?
>
> . . . .
>
> A: We were going to further investigate, yes, sir.
>
> Q: Right. Further investigate, check the blunt out and see if it had marihuana, and then you make the arrest, right?
>
> A: Yes, sir.

Although Bradley testified that the officers were going to "further investigate," it would not be against the great weight and preponderance of the evidence for the district court to find that Bradley's actions immediately prior to McGruder's flight were consistent with an attempt to arrest

11

McGruder. Bradley testified that he asked McGruder "to go ahead and step out of the vehicle." Then, when McGruder refused to do so, Bradley "went ahead and opened the door" to the vehicle. Also, when McGruder attempted to close the door, Bradley used his leg to block the door from being closed. Finally, before McGruder was able to flee, Bradley "deployed [his] pepper spray" on McGruder's face. We find nothing "manifestly unjust" about the district court inferring from these actions that Bradley was attempting to arrest, rather than merely detain, McGruder.

Having concluded that the evidence is legally and factually sufficient to support McGruder's conviction for evading arrest, we overrule his sole point of error.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: June 26, 2009

Do Not Publish