TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00726-CR






Dwayne Anthony McGruder, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT

NO. 62162, HONORABLE JOE CARROLL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 The district court convicted Dwayne Anthony McGruder of the offense of evading
arrest. See Tex. Penal Code Ann. § 38.04 (West 2003). Punishment was assessed at nine months
in state jail. In a single point of error, McGruder challenges the sufficiency of the evidence. (1) We
will affirm the judgment.




BACKGROUND

 The district court heard evidence that on the evening of November 1, 2007,
Officers Richard Bradley and Luis Osorio of the Killeen Police Department were patrolling
the streets of Killeen when their attention was drawn to the parking lot of a convenience store. 
According to Bradley, in the past he had "had numerous calls to that store and citizen contacts at that
store in reference to narcotics activity. This particular day there was a lot of traffic in front of the
store, a lot of vehicles, a lot of people standing outside. And, so, we decided to just walk through
the parking lot to see what was going on."

 When the officers pulled into the parking lot, they "heard some loud music
coming from a vehicle." Bradley identified the vehicle as an "older model blue Cadillac." The
officers observed the vehicle leave the parking lot, and they followed it onto the street and initiated
a traffic stop. Osorio, an officer trainee who was driving the patrol car, testified that the purpose of
the stop was to inform the occupant of the vehicle about a city ordinance prohibiting loud music. 
On cross examination, Osorio testified that they had no intention of arresting or even giving anyone
a citation at that point; they were intending only to warn the driver about the noise coming from
the vehicle.

 Osorio approached the vehicle while Bradley remained in the patrol car. The driver
of the vehicle was identified as McGruder. Osorio explained that when McGruder lowered his
window to speak with him, "a lot of smoke came out of the vehicle." Osorio testified that he did not
know what kind of smoke it was and, at that time, he did not suspect that it was marihuana smoke. 


Osorio recalled,


At that time I asked Mr. McGruder if he was smoking in the vehicle. I also asked
him if there was anything in the vehicle that I needed to know about. He told me, no
there wasn't. I asked him if he minded if I checked the vehicle. He also told me
there was nothing for me to check.



Osorio informed McGruder about the city ordinance and told him to "sit tight" while he checked
McGruder's driver's license. Osorio then returned to his vehicle, told Bradley about the smoke, and
asked him if he could "check the vehicle." Bradley advised Osorio against doing so, but decided to
talk to McGruder himself.

 When Bradley approached McGruder, he noticed that McGruder was talking on
his cell phone and "would not really acknowledge my position there next to the vehicle." Bradley
asked McGruder "several times to end the phone call," but McGruder "refused to do so." Bradley
also noticed that McGruder "was sweating profusely" despite the fact that "it was approximately
60 degrees that evening." Additionally, Bradley testified, McGruder "had a burned cigarette over
his left ear, yet he was smoking a second lit cigarette to the point where he was inhaling deeply,
exhaling the smoke in the vehicle, placing his cigarettes in the ashtray, picking it back up, inhaling,
exhaling." Bradley further observed that McGruder's "heart was beating hard enough to actually see
the movement of the heart through the shirt that he was wearing."

 Bradley looked into the vehicle and observed that when McGruder was putting
the cigarette into the ashtray, "he was intentionally putting it to the far side away from an object in
the ashtray." Then, Bradley testified,


When I moved my flashlight and looked at that object in the ashtray, it appeared to
be what is commonly referred to as a 'marihuana blunt' or a cigar that has been cut
open, the contents removed and replaced with marihuana. Also, in the center area of
the seat was a piece of a corner of a clear plastic baggie that had been torn off which
is also consistent with someone who has had marihuana.


On cross, Bradley testified that although he thought the object he had observed was a marihuana
blunt, he could not be certain at that time if it was anything more than a "[c]igar-type pipe." He also
testified that the baggie he had observed was small, "probably between half and three-quarters of an
inch," and that possessing such a bag was not illegal.

 After observing the objects in the car, Bradley asked McGruder to exit his vehicle. 
According to Bradley, "He refused to do so at which point I went ahead and opened the door. 
Immediately after opening the door, he reached toward the door to grab it and attempt to close the
door." As Bradley tried to prevent McGruder from closing the door, Bradley saw McGruder's right
hand "move up to the gear selector which led me to believe he was fixing to take off." In an attempt
to prevent McGruder from leaving, Bradley deployed his pepper spray on the left side of McGruder's
face. Despite being pepper-sprayed, Bradley testified, McGruder "took off" in his vehicle. Bradley
ran back to the patrol car, and a pursuit ensued.

 According to Bradley, the officers pursued McGruder for "approximately a mile"
through a residential area. Eventually, McGruder pulled into a driveway at the address where he
lived. Bradley explained that McGruder exited the vehicle and then, as Bradley was approaching
him with his weapon drawn, returned to the vehicle and grabbed an unknown item. McGruder exited
the vehicle again and proceeded to run southbound to a six-foot privacy fence. Bradley testified
that McGruder "vaulted the fence." The officers "kicked open the gate to the fence," found
McGruder in the backyard, and ordered him to the ground. According to Bradley, "He did not
comply at that point. We forced him to the ground. He continued to wrestle, and he was finally
placed in handcuffs."

 McGruder was charged with the offense of evading arrest with a motor vehicle. 
McGruder waived his right to a jury trial. The district court found him guilty as charged and
sentenced him to nine months in state jail. This appeal followed.


ANALYSIS

 In his sole point of error, McGruder challenges the sufficiency of the evidence
supporting the district court's finding of guilt. According to McGruder, the State presented
insufficient evidence that the officers were attempting a "lawful arrest" at the time McGruder fled
in his vehicle. This is the only element of the offense that McGruder challenges.

 In a legal sufficiency review, we consider whether, after viewing the evidence in
the light most favorable to the verdict, a rational trier of fact could have found the elements of
the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 324 (1979); Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "This standard accounts for the factfinder's
duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences 
from basic facts to ultimate facts.'" Clayton, 235 S.W.3d at 778 (quoting Jackson, 443 U.S. at 319).
It is not necessary that every fact point directly and independently to the defendant's guilt, but it is
enough if the conclusion is warranted by the combined and cumulative force of all the incriminating
circumstances. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

 In a factual sufficiency review, we consider whether, after viewing the evidence in
a neutral light, a rational trier of fact was justified in finding guilt beyond a reasonable doubt. See
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). "A verdict should be set aside only
if the evidence supporting the verdict is so weak as to render the verdict clearly wrong or manifestly
unjust." Id. at 705; Korell v. State, 253 S.W.3d 405, 412 (Tex. App.--Austin 2008, pet. ref'd). 
Therefore, we will not reverse a judgment on a factual sufficiency challenge unless we can say, with
some objective basis in the record, that the great weight and preponderance of the evidence
contradicts the verdict. Watson, 204 S.W.3d at 417.

 A person commits the offense of evading arrest or detention if he intentionally
flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. 
Tex. Penal Code Ann. § 38.04(a) (West 2004). However, in this case, the indictment alleged only
that Officer Osorio was attempting to lawfully arrest McGruder. The indictment contained no
language about Osorio attempting to detain him. Therefore, the State was required to prove that
Osorio was attempting to lawfully arrest McGruder. See Throneberry v. State, 109 S.W.3d 52, 56
(Tex. App.--Fort Worth 2003, no pet.).

 In Texas, a warrantless arrest is lawful only when (1) probable cause for the arrest
exists; and (2) at least one of the statutory exceptions to the warrant requirement is met. McGee
v. State, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003). One such exception is that a peace officer
may arrest an offender without a warrant for any offense committed in his presence or within his
view. Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2005). (2) "The test for probable cause for a
warrantless arrest under [article 14.01(b)] is whether at that moment the facts and circumstances
within the officer's knowledge and of which he had reasonably trustworthy information were
sufficient to warrant a prudent man in believing that the arrested person had committed or was
committing an offense." State v. Steelman, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002) (quoting
Beverly v. State, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990)). An offense is deemed to have
occurred within the presence or view of an officer when any of his senses afford him an awareness
of its occurrence. Id. (citing Clark v. State, 35 S.W.2d 420, 422 (1931)).

 In arguing that the evidence is insufficient to show that the officers were attempting
to lawfully arrest him, McGruder asserts that "the trial record is clear that the officers stopped
the Appellant's vehicle due to loud music," and that it is "undisputed that the officers intended
simply to warn the Appellant of the city ordinance related to loud music." In McGruder's view,
"[t]he record is void of any evidence that either officer changed his mind about the decision to only
warn the Appellant of a possible violation." "If the city ordinance is valid," McGruder continues,
"then the officers likely had the authority to briefly detain the Appellant to warn."

 The above argument is based on the premise that the offense on which the
district court relied in finding McGruder guilty of evading arrest was the violation of the
city ordinance. However, the record supports a finding by the district court that the officers
were attempting to lawfully arrest McGruder for another offense, namely, marihuana possession. 
See Tex. Health & Safety Code Ann. § 481.121 (West 2003). Although the officers testified that
their original purpose for stopping McGruder was to warn him about violating the city ordinance,
the district court could have reasonably inferred that this purpose changed during the course of
McGruder's detention. Osorio testified that when McGruder lowered his window to speak with
him, "a lot of smoke came out of the vehicle." Osorio then warned McGruder about the ordinance,
told him to "sit tight," and walked back to his patrol car to check McGruder's license. When Osorio
returned to the patrol car and informed Bradley about the smoke, Bradley decided to speak with
McGruder himself. At this point, the district court could have reasonably inferred, the purpose of
the detention had shifted from warning McGruder about the ordinance to investigating whether
McGruder was involved in criminal activity.

 Prior to attempting to arrest McGruder, the officers had observed the following:



 The vehicle in which McGruder was driving was coming from a convenience store in
which Bradley had "had numerous calls to that store and citizen contacts at that store in
reference to narcotics activity."

 Osorio testified that when McGruder rolled down his window to talk to him, "a lot of
smoke came out of the vehicle."

 Bradley testified that when he approached McGruder, McGruder was talking on his cell
phone and "would not really acknowledge my position there next to the vehicle." 
McGruder, according to Bradley, also refused to end the call despite repeated requests
from Bradley to do so.

 Bradley also testified that McGruder "was sweating profusely" despite the fact that "it
was approximately 60 degrees that evening."

 According to Bradley, McGruder "had a burned cigarette over his left ear, yet he was
smoking a second lit cigarette to the point where he was inhaling deeply, exhaling the
smoke in the vehicle, placing his cigarettes in the ashtray, picking it back up, inhaling,
exhaling."

 Bradley further observed that McGruder's "heart was beating hard enough to actually see
the movement of the heart through the shirt that he was wearing."

 When Bradley looked inside the vehicle, he observed what appeared to be a marihuana
blunt and a clear plastic baggie which Bradley testified was "consistent with someone
who has had marihuana." Bradley testified that the marihuana blunt was in an ashtray
within McGruder's reach.




McGruder contends that none of the above facts would constitute an arrestable offense. However,
viewing the evidence in the light most favorable to the verdict, the district court could have
found that the totality of the above circumstances provided the officers with probable cause to
arrest McGruder for committing in their presence the offense of marihuana possession. See, e.g.,
Evans v. State, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (noting that evidence tending
to show that person possessed contraband includes "whether the contraband was in plain view," "the
defendant's proximity to and the accessibility of the narcotic," and "whether the defendant was
under the influence of narcotics"); Torres v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005)
(observing that Texas courts apply a "totality of the circumstances" test for determining if probable
cause for warrantless arrest exists); McGee, 105 S.W.3d at 614 (holding that officer had probable
cause to arrest defendant under article 14.01(b) based on factors such as presence of marihuana
smoke in air and marihuana cigarette on ground next to defendant); Josey v. State, 981 S.W.2d 831,
839-41 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd) (holding officers were justified in making
warrantless arrest under article 14.01(b) after they detained defendant and discovered cocaine behind
dashboard of his car); see also Texas v. Brown, 460 U.S. 730, 742-43 (1983) (holding that probable
cause requires only "reasonable belief" that certain items may be contraband; "it does not demand
any showing that such a belief be correct or more likely true than false"). Thus, the evidence is
legally sufficient to support a finding by the district court that the officers were attempting to
lawfully arrest McGruder.

 We reach the same conclusion when considering the evidence in a neutral light. The
evidence contrary to the verdict consists of Osorio's testimony on cross that he did not know what
kind of smoke was coming from McGruder's vehicle, and Bradley's testimony on cross that he
was not certain that the "cigar-type pipe" he observed in McGruder's vehicle was a marihuana blunt. 
It would not be against the great weight and preponderance of the evidence for the district court
to discount this testimony in light of the other evidence supporting the officers' probable cause
determination, including McGruder's apparent ignorance of Bradley's presence and his disregarding
of Bradley's requests to end his phone call; the physical symptoms McGruder exhibited suggesting
drug use; and the fact that McGruder was observed leaving a location in which Bradley had received
"numerous calls . . . in reference to narcotics activity." Additionally, the district court could have
discounted Osorio's inability to determine the kind of smoke he had observed based on Osorio's
prior testimony that at the time of the arrest, he was only an officer in training. Also, even though
Bradley was not "certain" that what he had observed was a marihuana blunt, the district court
could have chosen to credit Bradley's earlier testimony that he believed the object was in fact a
marihuana blunt. Bradley testified that he had been a police officer since 1994. It would not have
been "manifestly unjust" for the district court to infer from this evidence that Bradley had experience
identifying marihuana blunts. Bradley also testified that he could identify the "traits" of a marihuana
blunt: "The traits of a blunt having been cut open is that when it's put back together, it's tightly
wrapped. More tightly wrapped than the smaller diameter of a cigar." It would not have been
"manifestly unjust" for the district court to infer from this evidence that Bradley was able to
distinguish ordinary cigars from marihuana blunts. 

 McGruder also asserts that Bradley testified that he was merely attempting to detain
McGruder after Bradley discovered the objects in the vehicle, and that Bradley "mentioned nothing
about attempting to arrest the Appellant at that time." McGruder refers to the following exchange
during Bradley's cross-examination:


Q: And at that time you were attempting to detain him to investigate further
about this blunt you thought that it was and the Baggie and that thing, right?


A: Yes, sir.


Q: You were going to arrest him. You were going to detain him and further
investigate, correct?


. . . .


A: We were going to further investigate, yes, sir.


Q: Right. Further investigate, check the blunt out and see if it had marihuana,
and then you make the arrest, right?


A: Yes, sir.



Although Bradley testified that the officers were going to "further investigate," it would not be
against the great weight and preponderance of the evidence for the district court to find that
Bradley's actions immediately prior to McGruder's flight were consistent with an attempt to arrest
McGruder. Bradley testified that he asked McGruder "to go ahead and step out of the vehicle." 
Then, when McGruder refused to do so, Bradley "went ahead and opened the door" to the vehicle. 
Also, when McGruder attempted to close the door, Bradley used his leg to block the door from
being closed. Finally, before McGruder was able to flee, Bradley "deployed [his] pepper spray" on
McGruder's face. We find nothing "manifestly unjust" about the district court inferring from these
actions that Bradley was attempting to arrest, rather than merely detain, McGruder.

 Having concluded that the evidence is legally and factually sufficient to support
McGruder's conviction for evading arrest, we overrule his sole point of error.


CONCLUSION

 We affirm the judgment of the district court.



 __________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: June 26, 2009

Do Not Publish
1. In his brief, McGruder labels his point of error as a challenge to the factual sufficiency
of the evidence, and he refers only to the standard of review for factual sufficiency. However,
the substance of his argument more closely resembles a challenge to the legal sufficiency of
the evidence. Additionally, McGruder prays for a judgment of acquittal, the remedy for legal
insufficiency, rather than a new trial, the remedy for factual insufficiency. Because McGruder's brief
could be construed as challenging either the legal or factual sufficiency of the evidence, we will
address both. See Tex. R. App. P. 38.1(f).
2. In his brief, McGruder cites to another exception, article 14.03, which provides that a
peace officer may arrest, without a warrant, "persons found in suspicious places and under
circumstances which reasonably show that such persons have been guilty of some felony, violation
of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under Section 49.02, Penal Code,
or threaten, or are about to commit some offense . . . ." Tex. Code Crim. Proc. Ann. art. 14.03(a)(1)
(West 2003). We need not address the applicability of this exception.